Syllabus.

**Richmond.**

THOMSON AND ALS. V. BROOKE AND ALS.

January 26, 1882.

1. CHANCERY PRACTICE—*Final decree.*—Decree settling the principles of the cause, directing the disbursement of the fund and the payment of the costs, and leaving nothing to be done, and stating on its face that is a "final decree," *is a final decree.*

2. IDEM—*Appeal—Review.*—If errors of judgment in the determination of facts be complained of, such errors can be corrected only by appeal. If errors of law be complained of by bill of review, the errors must be such as appear on the face of the decrees, opinion of the court, orders and proceedings in the cause, arising on facts either admitted by the pleadings or stated as facts in the decrees (or opinions of the court); and the evidence in the case cannot be looked into in order to show the decrees to be erroneous in the statement of the facts.

3. IDEM—*Sale—Liability of commisioners.*—Decree to sell decedent's land in 1858. The two commissioners directed to make the sale were required to give the usual bond. One gave it. Sale made and confirmed, and commissioners ordered to collect and distribute the money. Bonded commissioner died in 1860. The other commissioner was also administrator of the decedent and counsel for the heirs. He collected in 1861 a large amount of the money and placed it to *his individual credit* in a solvent bank, where it perished by the war. Proceedings were instituted to hold the purchaser and the land bound for money paid to a commissioner who had given no bond, and also to hold the commissioner responsible for the funds collected and lost.

HELD:

1. The case of *Hess* v. *Rader*, 26 Gratt. 750, has no application to this case.

2. Purchaser paid the money into hands legally entitled to receive it.

3. On face of decree the commissioner is stated to be the counsel of the heirs of the decedent, and had the right to receive the money.

4. Under the circumstances, neither payer nor receiver is responsible, and the loss must fall on the heirs.

Appeal from decree of circuit court of Fauquier county in the suit of James S. Thomson against John M. Thomson and others, heirs of James Thomson, deceased, for the purpose of selling decedent's land and dividing the proceeds. Decree of sale was rendered in 1858—John P. Phillips, counsel for plaintiff, and James V. Brooke, counsel for the defendants, were appointed commissioners to sell, and required to give bond in the penalty of $10,000, with good security. Phillips executed the bond. Sale made to Brandt Kincheloe. Cash payment made to Phillips and bonds executed to and returned by him for deferred payments. Sale confirmed in 1859, and commissioners ordered to collect the bonds as they fell due. Phillips collected until his death, which occurred early in 1860. Brooke then withdrew the remaining bonds and proceeded to collect on them. In the fall of 1861 he collected a large amount of the money and placed it to his individual credit in the Farmers Bank of Virginia at Richmond, without "ear-marking" it in any way. At various times all the distributees urged Brooke to collect the money, and to many, if not to all of them, Kincheloe, at sundry times, paid money upon the written orders of Brooke, who was administrator of decedent and counsel for his heirs. Kincheloe paid the entire purchase money. The amount collected in the fall of 1861 and deposited in bank by Brooke perished by the war. On these facts, was the purchaser entitled to a conveyance? The heirs by other counsel, claimed that the purchaser should not be credited by the sums paid Brooke and lost, for the reason that he had not given bond, and had no right to receive the money. Court below at first responded "no" to this inquiry, and held that both purchaser and land were liable for the money paid Brooke and lost. But on a rehearing, it reversed that decree and entered a final decree stating on its face that Brooke was counsel for decedent's heirs, exonerating both Kincheloe and Brooke, and directing a con-

veyance of the land to the former. A bill of review, or petition for rehearing of the last decree (which was entered April 19, 1876), was filed by decedent's heirs, and much discussion ensued as to whether that decree was *final*, and of the grounds of opening the same by bill of review. Court below refused to reverse the decree as to the liability of Kincheloe and the land, and of Brooke, and the heirs appealed to this court.

*John A. Meredith*, for appellant.

*R. T. Scott, James A. Jones, W. W. Crump*, for appellees.

CHRISTIAN, J., delivered the opinion of the court.

The court is of opinion that the decree of the circuit court of Fauquier county, rendered on the 19th day of April, 1876, is essentially a final decree. It is a decree which settles all the principles of the cause, directs a disbursement of the fund in the hands of the administrator, directs the payment of costs, and leaves nothing else to be done in the cause, and upon its face declares that "this decree is final." There was certainly nothing left to be adjudicated in that cause. And the finality of such a decree comes within the very definition of the authorities, as laid down by this court in repeated decisions. See the opinion of Judge Burks in the case of *Rawlins' Ex'or* v. *Rawlins and als.*, and the cases therein cited, reported in the August *Law Journal*, 1881.

Treating this decree, therefore, as a final decree, and treating the petition filed by the appellant as a bill of review, the question we have to determine is, whether the decree of the said circuit court upon the bill of review is erroneous.

In the view we take of the case, it is not necessary or

proper to go into a consideration of the voluminous evidence in the cause.

It is well settled that a bill of review can only be brought upon two grounds—first, upon newly-discovered evidence; and, second, upon errors of law apparent upon the face of the record. As was said by Judge Burks in *Rawlins* v. *Rawlins (supra)*: "The first ground in this case may be laid out of view, because there is no suggestion or pretension that there was any after-discovered testimony. As to errors of law, they must be such as appear on the face of the decrees, orders, and proceedings in the cause, arising on facts either admitted by the pleadings or stated as facts in the decrees. Such errors of law, and such only, may be corrected by a bill of review. But if the errors complained of be errors of judgment in the determination of facts, these can only be corrected by appeal."

Such is the distinction taken by all the authorities. See Story's Eq. Plds. § 407, and cases there cited.

In *Dexter* v. *Arnold*, 5 Mason's Rep. 303–311, Mr. Justice Story observes that "in regard to errors of law apparent on the face of the decree, the established doctrine is that you cannot look into the evidence in the case in order to show the decree to be erroneous in its statement of facts. That is the proper office of the court upon an appeal. But taking the facts to be as they are stated to be on the face of the decree, you must show that the court have erred in point of law. If, therefore, the decree do not contain a statement of the material facts on which the decree proceeds, it is plain that there can be no relief by a bill of review, but only by an appeal to some superior tribunal. It is on this account that in England decrees are usually drawn up with a special statement of, or reference to, the material grounds of fact for the decree. In the courts of the United States the decrees are usually general. In England the decree embodies the substance of the bill, plead-

ings, and answers; in the courts of the United States the decree usually contains a mere reference to the antecedent proceedings, without embodying them. But, for the purpose of examining all errors of law, the bill, answers, and other proceedings are, in our practice, as much a part of the record before the court as the decree itself; for it is only by a comparison with the former that the correctness of the latter can be ascertained."

The same learned judge, in *Whiting et als.* v. *The Bank of the United States,* 13 Pet. 6, 14, says: "In England the decree always recites the substance of bill and answers and pleadings, and also the facts on which the court founds its decree. * * * But with us the bill, answer, and other pleadings, together with the decree, constitute what is properly considered as the record. And therefore, in truth, the rule in each country is precisely the same in legal effect, although expressed in different language—viz: that the bill of review must be founded on some error apparent upon the bill, answer, and other pleadings, and decree; and that you are not at liberty to go into the evidence at large in order to establish an objection to the decree, founded on the supposed mistake of the court in its own deductions from the evidence."

These cases were emphatically approved by the supreme court of the United States in the cases of *Putnam* v. *Day,* 22 Wall. pp. 60–67, and in *Buffington* v. *Harvey,* 5 Otto, 99. In the latter case it is said: "The decision of the court upon the issues of fact, so far as they depend upon the proofs, are conclusive on a bill of review." See also *Bartlett & Miller* v. *Fifield,* 45 N. H. 81. These principles are approved by this court in *Rawlins* v. *Rawlins (supra).*

Now, applying these well-settled and indisputable principles to the case before us, and looking, as we can only do, to the face of the decree complained of, together with the opinion of the court filed as a part, of said decree, and dis-

carding, as we are bound to do, the evidence in the cause, which, according to the authorities above referred to, cannot be considered, we are bound to conclude that there is no error in the decree complained of, and it is manifest, looking to said decree and the pleadings in the cause, that the same must be affirmed.

The facts recited in the decree and the opinion of the court (which must be taken as a part of said decree), and in the pleadings in the cause, may be briefly stated as follows: Prior to the late civil war a suit was brought in the circuit court of Fauquier county, which had for its object the sale of the real estate of James Thomson, for the purpose of paying his debts and dividing the residue of the proceeds of sale among those entitled. Brooke, the appellee, was the counsel of the heirs of Thomson in that suit. A decree of sale was ordered of the real estate of Thomson, and Phillips and Brooke, attorneys in the case, were appointed commissioners to sell the land. A bond in the penalty of $10,000 was required by the court. Phillips gave the bond required by the decree. It seems that Brooke did not execute a bond. The sale was reported to the April term, 1859, by both commissioners and the sale made by them was confirmed.

In the decree of confirmation the court uses the following language: "The court doth confirm said sale, and doth adjudge, order and decree that said commissioners proceed to collect the purchase money as it falls due, and report their proceedings to this court."

Mr. Phillips, who had given the bond, went on to collect the purchase money, until the time of his death, which occurred early in the year 1860. Mr. Brooke, after the death of Phillips, withdrew the remaining purchase money bonds, and proceeded to collect them. Brooke, as stated in the opinion (which is a part of the decree), was both the administrator of Thomson and the counsel of his heirs.

In the fall of 1861 Brooke collected a considerable sum of money—the balance of the purchase money paid by Kincheloe, the purchaser—which he deposited in the Bank of Virginia.

This money was paid by the purchaser at the request and earnest solicitation of the parties to whom it was due. It was received by Brooke in the interest of the heirs, who urged Kincheloe to pay the balance of the purchase money into the hands of Brooke.

Brooke received it, and paid it into a then solvent bank where he kept his own deposits.

It is true he did not ear-mark the identical money, as the money belonging to Thomson's heirs, but he certainly placed it in a safe place, and the decree and opinion of the court (a part of it) shows conclusively that Brooke never used a dollar of this money, but that it remained in bank subject to be paid over to his clients after the war closed.

There can be no question in this case as to good faith on the part of Brooke.

He did what a prudent man would naturally do—that is, to put the money in a place of safety to be held and reserved for the parties entitled thereto.

He certainly is not responsible for the failure of the bank.

The loss here was not in consequence of the deposit. It was not the failure of a bank or insolvency of a banker, but the sudden and irretrievable destruction of the whole currency of a country by the termination of a civil war, which had destroyed the very power that created it.

We think the court below was right in holding that Brooke was guilty of no *mala fides*, and that he did all in his power to preserve the fund for the benefit of the heirs.

He deposited in the Bank of Virginia, which was a State depository, the amount in his hands, and he cannot be held responsible for the failure of the bank, caused by the results of a civil war, over which he had no control.

Kincheloe was entitled to his deed as decreed by the circuit court, because he had paid all his purchase money into the hand legally entitled to receive it.

The case of *Hess* v. *Rader*, 26 Gratt. p. 750, has no application to this case.

Brooke, according to the decree and the opinion of the court, was the counsel of the heirs of Thomson, and the purchaser had a right to pay the balance of purchase money to Brooke as counsel, and the facts set forth in the decree and the opinion of the court (a part of it) are conclusive to show that the heirs were clamorous and persistent that the purchaser should pay over to Brooke the balance of the purchase money.

He was fully justified, therefore, in receiving the money from Kincheloe, the purchaser, and was careful to do the best he could under the circumstances in depositing the amount received by him in the Bank of Virginia, at that time recognized as a solvent bank, as one of the depositories of the State, which amount he received as commissioner of the court and counsel of the parties, and not one dollar of which he ever appropriated to his own use, but which perished in said bank by its failure consequent upon the result of the late civil war.

As was said by this court in *Hale* v. *Wall*, 22 Gratt. p. 435 : " It would be too rigorous and unjust, it would be in violation of those well settled principles founded in reason and conscience which control the courts of equity, to hold that though the appellee (Brooke) has been guilty of no *malafides*, no misconduct, no negligence, yet he is to be held responsible for a loss which he had no part in creating and no power to prevent. But that loss, we think, ought to fall upon those who are entitled to the fund that perished."

We are of opinion, therefore, that the appellee Brooke, as shown by the facts stated in the decree and the pleadings in the cause, cannot be held responsible for the

amount which he deposited in bank, and which perished by the results of the late civil war; and also that Kincheloe, the purchaser of the land, having paid the whole of the balance of the purchase money to Brooke, who was both commissioner and attorney of the heirs of Thomson, is entitled to receive a deed for the land thus purchased.

We are, therefore, of the opinion that looking, as we only can look, to the decree and pleadings in the cause and applying the principles so well settled according to the authorities above referred to, to bills of review, which can only be filed upon after-discovered evidence, or error of law apparent on the face of the record, the decree of the circuit court of Fauquier county must be affirmed.

DECREE AFFIRMED.