| 80 | 475 |
| 93 | 457 |

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## YATES AND AYRES v. ROBERTSON & BERKELEY.

### MAY 7TH, 1885.

1. *Judgments—Relation back—General rule—Exceptions.*—As a general rule, a judgment rendered at any time during a term, relates back to the first day of the term, as if rendered then. This, however, is not always so. The rule does not apply to a judgment rendered during a term in a case which was in such a condition that the judgment could not have been rendered on the first day of the term. *Coutts* v. *Walker*, 2 Leigh, on p. 303, top; *Brown* v. *Hume*, 16 Gratt. on p. 465.

2. ATTORNEY AND CLIENT—*Fees—Taxed—By contract.*—The clerk of the court cannot tax against the losing party in a suit, other than the fees prescribed by statute. But contracts, express or implied, between attorney and client for fees, are not limited as to amount, and may be enforced as other contracts.

3. IDEM—*License.*—A client cannot refuse to pay his attorney his fees, though that attorney be practicing without license.

4. IDEM—*Influencing legislation—Bribing—Argument.*—Section 6, chapter 5, Criminal Code of 1878, p. 295, aims at the offence of paying money or other compensation to secure the passage or defeat of any measure, and was doubtless intended to apply to the use of money in buying votes, &c.; and not to contracts with attorneys for purely professional services, such as drafting petitions, setting forth client's claim, taking testimony, collecting facts, preparing arguments, oral or written, addresses to the legislature or its committee, with the intention to reach its reason by argument. Hence contracts for the latter purpose are valid. *Trist* v. *Child*, 21 Wall. 441.

Error to judgment of circuit court of Danville, rendered 16th June, 1883, in an action of assumpsit then therein pending between H. Robertson and L. C. Berkeley, Jr., late lawyers and

partners in the firm and style of Robertson & Berkeley, plaintiffs, and David Ayres and Lewis A. Yates, defendants. The object of the suit was to recover of the defendants $750, for services rendered to them by the plaintiffs as lawyers. The judgment was for that sum with interest from 13th June, 1883, until paid, and costs. To this judgment the defendants obtained from one of the judges of this court a writ of error and *supersedeas.* During the trial the defendants offered, but the court refused to give, several instructions, and they excepted, The instructions, with full detail of all the facts of the case, are set out in the opinion of the court.

*John Lyon,* for the plaintiffs in error.

*J. P. Harrison, W. W. Gordon* and *Withers & Barksdale,* for the defendants in error.

LACY, J., delivered the opinion of the court.

The case is as follows: The defendants in error, attorneys-at-law, instituted suit in the circuit court of Danville, against the plaintiffs in error, in *assumpsit,* to recover lawyers' fees of $750.

The first item claimed was $500, for defending the defendants against the Commonwealth of Virginia, as sureties on the official bond of Wm. E. Boisseau, late sergeant of Danville, for $30,000, in the circuit court of Richmond, Va., and setting aside a prior judgment, and making deed of trust from said Boisseau and wife, available for indemnity of said sureties.

The second was a fee for drawing bill for the relief of said sureties, passed by the legislature of Virginia, and advice and services in aid of compromise effected with the state in satisfaction of judgment of $30,000 against said sureties, $250.

The defendants plead non-assumpsit. A special jury, free from exception, was selected and sworn in the case, and upon the trial rendered a verdict for the plaintiffs for the sum claimed,

upon which judgment was entered accordingly. Whereupon, the plaintiffs in error applied for and obtained a writ of error and *supersedeas* from this court.

The first assignment of error here is, that the circuit court refused to instruct the jury: " That under the laws of Virginia, a judgment rendered during the term of a court relates back to the first day of the term, and has precedence of any trust-deed made by the judgment debtor after the commencement of the term and before the date of the judgment."

It is true, that for some purposes our law regards the whole term of a court as one day, so that a judgment given at any time during a term relates back to the first day of the term, as if rendered then. This is not always so, however. The principle does not apply to a judgment rendered during a term in a case which was in such a condition that the judgment could not have been rendered on the first day of the term. While this will oftener, perhaps, occur in equity than in a court of law, it may, nevertheless, and does happen in a common law case, under circumstances that will readily suggest themselves. The judgment may be by confession during the term, in which case no suit had been instituted on the first day of the term. Or, as it did happen in this case, the judgment may be upon notices served or acknowledged after the commencement of the term, and after the execution of the trust-deed in question. And, moreover, by express agreement between the parties in the proceedings in question, the judgments were to be postponed to the trust-deed, both judgments and trust-deed having in contemplation a common object, to subject the property of the principal debtor to the satisfaction of the debt, to the relief, as far as it would go, of the securities on his official bond as sergeant. The instruction therefore had no application to this case, as disclosed by the evidence, was properly refused, and we think the circuit court did not err in refusing the same. *Mut. Assur. Soc.* v. *Stanard,* 4 Munf. 539; *Coutts* v. *Walker,* 2 Leigh, 268, 276; *Withers* v. *Carter,* 4 Gratt. 418; *Jones* v. *Myrick,* 8

Gratt. 179.; *Brown* v. *Hume,* 16 Gratt. 465; 1 Lom. Dig. 2d ed. top page 372, 373, 374, and note; V. C. 1873, ch. 182, sec. 6; Min. Inst. vol. 2d, p. 271.

The second assignment of error here is, that the court refused to instruct the jury, "that in the absence of any contract between an attorney and his client about what amount of fee he shall receive for services in any suit, the law fixes the fee of such attorney for such services at $2.50; and that in the absence of any contract between an attorney and his client respecting the fee such attorney shall receive for services in any suit, the law fixes the fee of such attorney, for such services, at $2.50:" and giving in lieu thereof the following: "The court instructs the jury, that if they believe from the evidence that the defendants employed the plaintiffs to represent them in getting the judgments against Wm. E. Boisseau in favor of the Commonwealth set aside, and to advise them, and do such other acts as might be necessary to protect their interest as against said claims, and it was understood between the parties that plaintiffs should receive compensation for such services, though the amount of compensation was not fixed; and that the plaintiffs, in pursuance of such employment, performed the service mentioned in their declaration and account filed; then the plaintiffs are entitled to recover what such services were reasonably worth, of such of the defendants as so employed them."

The ground of this exception is, that by section 11, chapter 160, of the Code of 1873, the fee of an attorney is fixed and limited to the amount which the clerk is authorized to tax in the bill of costs in any suit; and that by section 13 of chapter 181 of the Code, such fee in this cause so authorized to be taxed is $2.50.

Section 11, chapter 160, *supra,* does provide for such a fee; but the section further provides:

"But any contract made with an attorney for other or higher fees, shall be valid, and may be enforced in like manner with any other contract."

Under the 14th and 15th sections of chapter 76, Code 1819, volume 1st, the lawyers of the commonwealth were limited to fees provided for in the said 14th section; the 15th section providing that no lawyer, in any suit to be brought for his fees or services, shall recover more than the fees so provided, notwithstanding any agreement, contract or obligation made or entered into by the party against whom such suit shall be brought; retaining from the older acts of 1761, chapter 3, sections 11 and 12, of edition of 1769, and chapter 71, section 12, of editions of 1794, 1803 and 1814, the provision, "If such agreement, contract or obligation shall have been entered into before the suit or suits in which such fees shall have accrued, or services been rendered, were finally determined;" which provisions were in force from January 1st, 1820. The legislature, however, January 2nd, 1840, repealed this provision of the law, and enacted the provision, cited *supra*, as part of section 11, chapter 160, of the Code: "But any contract made with an attorney for other or higher fees shall be valid, and may be enforced in like manner with any other contract;" which provision appears in the Code of 1849, and is the law, as we have seen in the present Code.

In arriving at the true construction to be given to this provision of the law, as found in the 11th section of chapter 160, we may observe the striking contrast between the severe restriction to be found in the 15th section of chapter 76 of the Code of 1819, and the entire absence of all restriction in the present law. The policy of the law as to the lawyers, appears to be *entirely* changed, and they are left free to conduct their business transactions with their fellowmen upon the same basis as other citizens; they and those dealing with them to be mutually bound by their contracts, express or implied. Mr. Minor, speaking upon this subject, says:

"In respect to the compensation of attorneys, the policy so long and so vainly persisted in of prescribing and limiting their fees, was abandoned at the revisal of 1849, so that since that

period an attorney may make any contract for fees with his client, and it will be valid, and may be enforced like other contracts (citing section 11, chapter 160, Code 1873); nor does it seem to be material whether the contract is *express* or *implied*, so that if no contract be proved, the attorney will be entitled to receive a fair and adequate compensation for his services. It should be observed, however, that the clerk is not authorized to tax against the losing party any other attorney's fee (whatever the successful adversary may have actually paid), than the very inconsiderable sums prescribed by law, in most cases not to exceed $2.50 in a court of law," &c.    4 Minor's Insts. 177.

And it may be further said, that this is taxed only on one side, to be paid to the winning side, and nothing is provided as to the attorney's fee on the other side. Under the construction contended for by the plaintiffs in error, what is the fee to be paid to the attorney on the losing side? The law makes no provision for it whatever; it is left to depend upon contract. And this fee, fixed and provided in the statute, is intended for cost, to recompense the party to the cause for his outlay, &c., and is in no wise intended by the law-makers to limit the fee of a lawyer, as between him and his client, which is expressly left to depend upon contract between the parties, which, like contracts growing up in the transactions of other citizens of the commonwealth, may be either express or implied. It follows that the circuit court properly instructed the jury on this subject, and this exception must be overruled.

The next exception to be considered is, the refusal of the court to instruct the jury, "That if they believe from the evidence in this cause that any portion of the sum sued for in this action is for fees, reward, or compensation to the plaintiffs for appearing before any committee of either branch of the general assembly, and speaking, writing or printing, or using before them any argument for or against any measure or proposition to be passed upon by the general assembly, then they must find for the defendants, as to such portion of the sum claimed by the

plaintiffs; unless the jury shall also believe, from the evidence, that the plaintiffs at the time of so appearing, &c., before such committee, &c., had paid the license tax of $100, provided for in section 94, chapter 239, pages 311 and 312, Acts 1874-1875;" and the action of the court in instructing the jury, "If the jury believe from the evidence that the defendants, or some of them, employed the plaintiffs to advise them as to the best time and mode, and then to assist them in obtaining the passage of an act of the legislature for their relief, as sureties of the said William E. Boisseau, sergeant of the town of Danville, and promised them compensation for their advice and services in so doing, and that the plaintiffs did so advise, and did prepare a bill for the relief of said sureties, and did cause the said bill to be introduced into the legislature of Virginia, and did prepare a brief statement of the facts and grounds upon which the relief was prayed for, and cause the said brief or statement to be put into the hands of the chairman of the committee of the legislature, and other leading members thereof, so as to inform them, and through them the legislature, of the said facts and grounds, such action and services of the plaintiffs are not forbidden by law, and for such advice and services so rendered, the plaintiffs are entitled to recover in this action a reasonable compensation against such of the defendants as so employed the plaintiffs."

The court further instructed the jury, "That the law of Virginia makes it a misdemeanor for any person to pay or receive money, or other compensation, directly or indirectly, for the purpose of securing the passage or defeat of any measure by the general assembly; and if they believe from the evidence that any part of the claim made in this suit is for compensation for such services, that the plaintiffs cannot recover such portion." This last instruction being given by consent of both sides, and not excepted to by either.

The question raised by this exception is the refusal of the court to instruct the jury that the attorney could not recover

any compensation for appearing before any committee of the legislature, as such, in advocacy of the rights or interests of his client, unless he had paid the license tax required by law of $100.

In the first place, it is not discernible from the record that the plaintiffs did appear before any committee of the legislature concerning this business, or that any evidence was introduced on either side tending to prove such appearance. To appear in advocacy of any measure before a committee of the legislature, as retained counsel, is a privilege for which a license tax is required by law; to so appear without paying the required license tax is a misdemeanor, for which the statute prescribes a penalty; but the loss of the value of the services is not the prescribed penalty, and such penalty as is prescribed is not to be enforced in this suit, nor in the forum where this suit was tried. If these lawyers had practiced their profession without a license, either in the circuit court of Richmond or before the committees of the legislature, they would have violated the revenue laws of this commonwealth, and been liable to prosecution thereunder therefor; but their clients cannot *on that account* refuse to pay them their fees. No such punishment or penalty is prescribed for this violation of the statute, and an offence which is punishable by statute, can be punished in no other way than that prescribed by the statute. It is a general rule, that a contract founded on an act forbidden by statute under a penalty, is void, but it does not necessarily follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in consideration of it. See *Middleton* v. *Arnolds*, 13 Gratt. 489; *Niemeyer* v. *Wright*, 75 Va. p. 243, opinion of Burks, J., and the authorities therein cited. But in this case there is no claim that the plaintiffs appeared before a committee, nor, except so far as thus suggested, that the license fee required by law had not been paid. See also *Lester and wife* v. *Howard Bank*, 33 Md. 558; 3d Amer. Rep. 211.

As to the instruction given in lieu of the instruction so re-

jected, set forth above, it would seem that the 6th section of chapter 5 of the Criminal Code, Acts 1877–78, p. 295, which provides that, "Any person who shall pay or receive money, or other compensation, directly or indirectly, for the purpose of securing the passage or defeat of any measure by the general assembly of this state, shall be guilty of a misdemeanor, and if convicted thereof, shall be punished by confinement in jail not exceeding twelve months, and by fine not exceeding $5,000," could not have been intended to apply to the compensation received by attorneys serving their clients as such before the legislature, in matters where their interests are involved. For by the terms of the law such attorneys are allowed to practice in such case, upon the payment of a license tax. The penalty prescribed would indicate that the offence aimed at was highly penal. "Pay money or other compensation" for "the purpose of securing the passage or defeat of any measure," was doubtless intended to apply to the use of money in the line of bribery and corruption, debauching the members, or buying votes. It cannot reasonably be held to refer to honest and honorable service rendered by a lawyer for a client, against whom the commonwealth has a demand growing out of the collection of her revenue.

But however that may be, in this case the court instructed the jury on this subject in the language of the statute, to which there was no objection on either side. The services defined and set forth in the sixth instruction given by the court, would seem to be legal and proper, and not in violation in any way of the law. To prepare a bill, advise their clients as to the best time and mode, and to assist them in obtaining the passage of a bill for their relief, and to prepare a brief statement of the facts and grounds upon which the relief was prayed for, and cause the same to be put in the hands of the chairman of a committee and other leading members, to inform them, and through them the legislature, of the said facts and grounds, &c., could not reasonably be held to come under a statute which

forbids the use of money in procuring or defeating legislation, under a penalty of twelve months imprisonment and a fine of $5,000. It is a rule of the common law, of universal application, that where a contract is tainted with immorality, or is against the maxims of sound public policy, as to the consideration of the thing to be done, no alleged right founded upon it can be enforced in a court of justice. *Marshall* v. *R. R. Co.*, 16th Howard, 314, and cases cited.

But, as was said by the Supreme Court of the United States, in the case of *Trist* v. *Child*, 21 Wall. 441, decided March 22, 1875—"We entertain no doubt that in such cases, as under all other circumstances, an agreement, express or implied, for such professional services, is valid. Within this category are included drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them orally or in writing to a committee, or other proper authority, and other services of like character. All these things are intended to reach only the reason of those sought to be influenced. They rest on the same principle of ethics as professional services rendered in a court of justice, and are no more exceptionable."

We think the circuit court did not err in giving the said sixth instruction, and the exception upon that ground must be overruled.

This covers all the exceptions raised in this court.

The facts proved are not certified, nor is there a statement of the evidence in the record. The verdict and judgment cannot be reviewed upon the merits, but upon the questions of law raised by the exceptions. For the foregoing reasons, we are of opinion to affirm the judgment of the circuit court of Danville.

JUDGMENT AFFIRMED.