# CHARLESTON.

Dunn's Ex'rs *v.* Renick *et al.*

Submitted February 1, 1895—Decided April 3, 1895.

1. Wills—Legacies—Taxes—*Res Adjudicata.*

A will directs executors to sell certain land to pay—First, a cer- tain debt; next, a legacy to Mrs. Dunn; next, a legacy to Mrs. McNeal; and the residue of proceeds to be equally divided between them and two other children. The executors have a naked power to sell, and the legal title descends to those four children as heirs. The land sells for only enough to pay the debt and the principal of Mrs. Dunn's legacy. Taxes on the land subsequent to testa-

tor's death are paid by the executors, and in this Court, by a former decree before sale, they are held to "be entitled, as against the residuary legatees of a portion of the proceeds of said real estate, to credit for the taxes so paid." One of those children (John Dunn) is given a specific devise and legacy. *Held*, the former decree is not *res adjudicata* to fix upon any of the four residuary legatees, receiving nothing as such from the land, a liability to contribute to the payment of such taxes, either as residuary legatees, heirs, or persons.

2. WILLS—RESIDUARY LEGATEES—TAXES.

They are not liable under the will, as residuary legatees, nor by law, as heirs, for such taxes.

3. TAXES.

Taxes are not a personal debt, or in the nature of a personal debt.

. WILL—TAXES—SPECIFIC LEGACY.

John Dunn is not liable for such taxes by reason of his receiving other land and personalty by specific devise and bequest under the will.

5. WILLS—TAXES—ABATEMENT OF LEGACIES.

Such taxes and commission to the executors on sale must be abated from Mrs. Dunn's legacy by crediting them on the money in the executor's hands going to her from the sale.

6. WILLS—ABATEMENT OF LEGACIES.

Demonstrative legacies are subject to abatement, but specific legacies are not.

7. JUDGMENT—FIRST DAY OF TERM.

Though a decree or judgment relate to the first day of a term, yet if the case was not ready for hearing or trial, and therefore no judgment or decree could have been given on such first day, it does not relate to the first day, but has the date of its actual entry of record.

*Quaere:* Do all proceedings of a court relate to the first day of a term?

*Quaere:* Does computation of time limiting a bill of review begin at the first day of the term, or at the date of actual entry of the decree?

8. BILL OF REVIEW.

A bill of review must state substantially the former bill or bills, the decrees and proceedings thereon, including the decree complained of, and the point wherein the party filing it is aggrieved.

9. BILL OF REVIEW—ERROR OF LAW—DEPOSITIONS.

On a bill of review for error of law, that error must be collected from the pleadings, and exhibits filed with the pleadings and orders and decrees, and must be made out on facts admitted in the pleadings, or stated in the decree as facts found. The depositions can not be looked to. An error of the court in reaching a wrong

conclusion as to facts upon the evidence is not correctible by bill of review, but by appeal.

10. BILL OF REVIEW—ERROR.
No one can correct, either by bill of review or an appeal writ of error, an error not aggrieving him.

11. WILLS—EXECUTOR'S SALE.
A will directs a sale of land by two executors. One only is present at the public auction, but the other consented that his co-executor make it, and ratifies and approves it. The sale is not invalid on these facts.

12. WILLS—BILL OF REVIEW—EXECUTOR'S SALE.
A will directs a sale of land by two executors. Before sale the executors bring a suit in equity to construe the will and administer the assets, making all persons interested parties, and in it decrees are made directing a sale of land by both or either of the executors. A sale is made and confirmed, and a bill of review is filed for reversal of the decree of confirmation. If there were error in the first decree, in giving power in either executor to sell, that decree being appealable and final, and relief against it by bill of review or appeal barred by limitation, reversal of the decree of confirmation would not affect it. It could not be reached by bill of review, and a sale by one executor under it would be valid, and beyond reach by such bill of review.

13. BILL OF REVIEW—SUPREME COURT OF APPEALS.
No bill of review for error of law will lie to a decree of the supreme court of appeals.
Can one of two executors sell land under a will?

A. C. SNYDER for appellants, cited 33 W. Va. 476, 480, 481, 482, 483; 19 Gratt. 438; 78 Va. 215; 15 W. Va. 732, 766; 16 W. Va. 32.

BROWN, JACKSON & KNIGHT for appellee, John R. Dunn, cited 2 Lomax Ex'or, side p. 152; 33 W. Va. 476; 67 Md. 498; 16 Pa. St. 275; 1 P. Wm. 779; 2 Ves. 194; Rop. Leg. 456; 18 W. Va. 441; 16 W. Va. 32.

J. W. ARBUCKLE for appellees, cited 33 W. Va. 476; 10 W. Va. 130; 78 Va. 223; 19 Gratt. 473; 15 W. Va. 767; Code, p. 123; 21 W. Va. 777; 33 W. Va. 430; 12 W. Va. 394.

BRANNON, JUDGE:

John W. Dunn died leaving four children—Lizzie J. Renick, Kate V. McNeal, John R. Dunn and Henry C. Dunn.

By his will he gave a tract of land called the "Home

Place" to John R. Dunn, and certain personalty. He direct-
ed the sale of a storehouse in Lewisburg, and that out of its
first proceeds there should be paid to his daughter Kate V.
McNeal one thousand dollars, and that the residue go to
John R. Dunn. He gave to a servant fifty dollars. He gave
to Lizzie J. Renick an indebtedness against her husband.
And he directed that his executors, at such time as they
should judge would promote a sale for the largest price,
should sell certain land in Kanawha county, and that out
of its first proceeds they pay certain indebtedness (about
three thousand dollars) of his son Henry C. Dunn, and sec-
ondly pay seven thousand dollars to Sallie P. Dunn, wife of
Henry C. Dunn, upon certain trust; and he directed that out
of a fund formed from the residue of the proceeds of sale
of the Kanawha land and the collection of debts due him,
his executors pay, first, seven hundred and thirty five dol-
lars to Kate V. McNeal, and that its residue be equally di-
vided between Lizzie J. Renick, Sallie P. Dunn, John R. Dunn
and Kate V. McNeal.

The Kanawha land remained unsold for nearly seven
years after the testator's death, and when sold brought ten
thousand dollars only—just the amount given by the will
for payment of indebtedness of Henry C. Dunn and the
legacy to his wife, Sallie P. Dunn. In the interim between
the death of the testator and the sale, taxes on this Kana-
wha land were paid by the executors.

Some five years after the testator's death the executors
brought this suit in the Circuit Court of Greenbrier county
to have the will construed and for other purposes; and the
case once before came to this Court, and the decision then
made will be found in 33 W. Va. 476 (10 S. E. Rep. 810). This
Court then decided that the taxes so paid should be refund-
ed the executors. When the case went back to the Circuit
Court from this Court, a further executorial account was
stated, and a balance was ascertained to be due the execu-
tors of one thousand six hundred and ninety nine dollars
and fifteen cents, made up of taxes paid by them on the
Kanawha lands, the commission to the executors on its sale,
and costs in this suit. The Circuit Court decreed that the

executors, out of money arising from the sale of the Kana-
wha land, retain the said balance found due them, which
operates to make the legacy to Sallie P. Dunn pay the whole
of it, by abating it that much.  Henry C. Dunn and Sallie
P. Dunn appeal.

For them it is contended that such balance in favor of the
executors is chargeable equally on the four persons who are
the legatees of any residuum which might remain from the
sale of the Kanawha land after paying the ten thousand
dollars given to pay, first, the indebtedness of Henry C.
Dunn, and next the legacy to Sallie P. Dunn, and next the
legacy to Kate V. McNeal, and that as two of them (Mrs.
Renick and Mrs. McNeal) are insolvent, it ought to be paid
by Sallie P. Dunn and John R. Dunn.   It is claimed that this
is enexorably so, by reason of the former decision of this
Court; that it is *res adjudicata* as to this.

Let us see as to this.  This Court, in its former decision
in the case, held "that the executors had a naked power to
sell, without any title vested in them, but that title vested in
the four children, as heirs, and that if the heirs permitted
the land to be returned delinquent for taxes, and the execu-
tors to prevent the loss of the land, paid taxes, they would
be entitled as against the residuary legatees of a portion
of the proceeds of said real estate, to credit for the taxes
so paid."   Judge Snyder, in the opinion, said:  "The title
to this farm descended to and vested in the heirs, subject
to the naked authority in the executors to sell it in the
manner prescribed by the will.   The heirs (that is, the four
children of the testator) were liable as the owners, for the
taxes on the farm.   *   *   *   If it was not the duty of the
executors to preserve the farm by paying the taxes, it is cer-
tain that the heirs can not justly complain that they, in good
faith, under a belief that it was their duty to do so, did what
the heirs neglected to do.   The payment of these taxes was
for the benefit of the estate, and, those entitled to the re-
siduum being those whose duty it was to pay them, it is en-
tirely equitable that the executors should be credited with
the amount, as against the residuary legatees for whose ben-
efit the payment was made."

This holding of the court, as explained by this quotation from the opinion, makes the foundation on which rests the plea of *res adjudicata.* Now, at the date of that decision the land had not been sold. It could not then be foreseen what it would sell for, or whether there would be or would not be any balance, after paying the ten thousand dollars given to Henry C. Dunn's debts and his wife, Sallie P., and Mrs. McNeal, to go to the residuary legatees. When sold, it brought just enough to pay that ten thousand dollars, without interest, leaving nothing to go to the residuary legatees. Did the Court mean to say that the four residuary legatees should each pay one fourth of the taxes on the land, whether they should receive anything from it or not? Had the sale left a balance to go to them, clearly these taxes should be paid out of that balance, because the said ten thousand was payable first, Mrs. McNeal's legacy of seven hundred and thirty five dollars next, and these legacies ought to be paid net, clear of abatement for taxes, and the four children get only the balance, they being legatees of only a residuum. That is what the Court meant; but when there is no residuum to go to them, and they get not a cent, where is the reason for charging the taxes to them? The fact of this deficiency was not before the Court, because non-existent when it rendered that decision. The Court only meant to charge the residuary legatees with taxes, in case they received anything as such legatees. If we charge them, on what theory shall we base the charge? Shall we say these four children were heirs, and liable for the taxes? They, as heirs, held only the dry legal title, without substantial interest, because they held subject to the power of sale to answer certain purposes. They should not pay simply as heirs, receiving nothing as heirs. The taxes could create no personal obligation, as heirs, upon them. Taxes are not a debt, or in the nature of a debt. *Board of Education of Cabin Creek Dist.* v. *Old Dominion I. M. & M. Co.,* 18 W. Va. 441. When Judge Snyder said the heirs, who were the residuary legatees also, were liable for the taxes, he said so because at that date they had an apparent, probable interest; but he never contemplated or intended to decide the liability

for those taxes, as between Sallie P. Dunn and the other residuary legatees, upon the basis of there being no residuum for distribution. And observe that Judge Snyder said the executors would be entitled to have the taxes "credited as against the residuary legatees for whose benefit the payment was made." The very word "credited" supposes something going from the executors to the residuary legatees. A sum can not be credited when there is nothing on which to credit it. And it is to be credited "against the residuary legatees for whose benefit the payment was made." For whose benefit was it made? At date of payment it was apparently, or might be, for all the four children, though first and foremost for Mrs. Sallie P. Dunn's benefit, she being the preferred legatee; but, as it turned out when the sale was made, it was for her sole benefit. Now, the decision says it must be "credited" in favor of the executors on the fund in their hands arising from the sale, and, as there is no fund in favor of the residuary legatees, it follows that it must be abated from Sallie P. Dunn's legacy. So, this former decision, logically applied to the facts as they now exist, is stronger, as a matter of *res adjudicata*, in favor of, than against, the decree complained of. Never did the Court think of saying in the former decision that those residuary legatees should be bound to pay those taxes as a matter of personal obligation. Yet that is what is proposed to be deduced from that decision. The simple fact that the balance due the executors should be "credited" upon what was expected to come to their hands for distribution among the residuary legatees absolutely repels and negatives all idea that the legatees were to be personally bound, or pay otherwise than by abatement from what should be coming to them. The record, as then before the Court, inspired a reasonable expectation that there would be a residuum, as the valuation placed on the land was largely in excess of what it finally realized.

Is it because of their character as residuary legatees that they should pay? They never became such. They received nothing as such. Had they taken anything they would have taken it subject to the burden. It is not possible that their mere nomination in the will as residuary legatees would im-

pose a personal responsibility. No more would it do so than if they were strangers to the will. Neither Sallie P. Dunn, nor any one else, is liable as residuary legatee, as their is no residuum; but because the executors are entitled to a refundment of the taxes, there being no other assets to pay them, and they having been spent for this land, there comes a necessity to abate them from her legacy. None of the four have any relation to a residuum, there being none.

It can not be thought for a moment that John R. Dunn is to be charged because he was devisee of another tract of land and legatee of certain personal property, because that devise and that legacy are specific in character. A specific legacy is liable to ademption, but not to abatement. The legacy payable to Mrs. Dunn out of the sale of the Kanawha land is a demonstrative legacy, and subject to abatement; and surely Mrs. Dunn can not, as owner of a demonstrative legacy, call on John R. Dunn, the owner of a specific legacy and devise, to relieve her legacy from abatement or loss from these taxes and commissions, but must suffer the abatement alone. John R. Dunn gets his specific legacy and devise without abatement, whether Mrs. Dunn gets her legacy or not. *Morriss* v. *Garland,* 78 Va. 215; *Bradford* v. *McConihay,* 15 W. Va. 766; 2 Lomax, Ex'rs, p. 69, c. 1, § 3; 2 Redf. Wills, p. 456, c. 13, § 7, subsecs. 1, 9. This is especially so, seeing that the cause of abatement is taxes on the Kanawha land itself, and subsequent to testator's death. A decree against those legatees can not be warranted on the idea that the executors have overpaid beyond assets, as all the facts to justify that theory are not present, and especially as this payment was on account of this particular land, and after testator's death. An executor can not recover a voluntary payment to a legatee when deficiency appears. *Davis* v. *Newman,* 2 Rob. (Va.) 664; 2 Lomax, Ex'rs 173; 1 Rop. Leg. 456.

It is urged in argument that the testator intended to make his children equal; that what was given to John R. Dunn, and the ten thousand dollars given for the debts of Henry C. Dunn and the legacy to his wife, Sallie P., were at the death of the testator equal, but that John R. Dunn occupied his

farm from the testator's death, while Sallie P. Dunn did not realize her legacy for nearly seven years, when the sale of the Kanawha land was made; and that this inequality somehow calls upon John R. Dunn to share the burden of the balance due the executors. I do not see that the accidental circumstance of delay of the sale should produce this result, even were there no other facts here to come in, if we are to consider circumstances of equity. But Sallie P. Dunn and husband during those years occupied and derived support from the Kanawha lands, without rent, which is reported by the commissioner to be worth one thousand two hundred dollars per annum—more than interest on her legacy, and more than interest on what was given John R. Dunn, and certainly as great as the yearly value of what John R. received. And John R. Dunn is not responsible for delay of sale. That was a matter with the executors; and not only John R. Dunn, but Sallie P. Dunn and her husband, objected to a proposed sale at a much larger sum than was finally realized.

It is said that the taxes were a debt made for the benefit of the estate. But it was not, but simply for the benefit of the owners of the Kanawha land, turning out to be Sallie P. Dunn alone. There is no obligation in John R. Dunn to contribute to it as a debt before the death of the testator. And, besides, he was a specific devisee and legatee.

It is said that the delay of sale, and consequent accruement of taxes, could have been avoided at any time by the turning over to Sallie P. Dunn, by the others interested, of the Kanawha land. They expected, as did Sallie P. Dunn and her husband, that the land would bring more. Is it reasonable or just to visit upon them a penalty for not giving up a fair chance of realizing something from this land? Is the omission to do so at all pertinent? If we compare default of duty between the children, we should rather expect Sallie P. Dunn to pay the taxes, as she was in possession, receiving large rents and profits from houses on it and from support, and had the largest interest to save it, as legatee. The tenant is liable in the first instance for taxes, though the landlord is ultimately, and the tenant may deduct them

out of rent. 1 Tayl. Landl. & Ten. §§ 341, 395; Code, c 30.
ss. 9, 15. But she paid no rent. Why is it inequitable to
charge her with taxes? So, I conclude that the taxes, and
a fortiori the commission on sale, should be abated from the
proceeds of sale in the hands of the executors, as the court
below decreed, and that John R. Dunn and Mrs. Renick and
Mrs. McNeal can not be made to pay any part thereof. Cer-
tainly the commission on the sale should be deducted from
the proceeds of the land.

Another question arises in this case, and an important one,
not only in this case, but in general practice. I can but re-
gret that we have not any argument of counsel or citation
of authority on this important point, and I have myself been
unable to find pointed authority upon it. The appellees
tendered a bill of review to reverse the decree confirming the
sale, and to set aside the sale and it was dismissed as ten-
dered too late, and a brief of counsel for appellees asks us
to reverse the action of the court in dismissing the bill of
review. The decree sought to be reversed by the bill of re-
view was actually entered June 30, 1890, and the bill of
review was entered July 1, 1893. By Code, c. 133, s. 5, a
bill of review must be filed "within three years next after
such decree." Shall we, in the computation of time, ex-
clude the 30th day of June, 1890? I think it must be ex-
cluded. Section 12, chapter 13, Code, enacts, as a general
rule in the construction of statutes, that "the time within
which an act is to be done shall be computed by excluding
the first day and including the rest." The statute limiting
prosecutions of misdemeanors uses the same words, "next
after," used in the limitation for bills of review; and in
State v. Beasley, 21 W. Va. 777, it was held that where an
offense was on June 3, 1878, and the indictment June 3, 1879,
the day of the commission of the offense must be counted
out, under the statute, and that the indictment was in time.
I think this would be so without the statute, though there
has been much controversy on this apparently simple ques-
tion. 1 Rob. Prac. 422; State v. Beasley, 21 W. Va. 780; Aug.
Lim. §§ 46, 50. Thus far the bill of review is not barred.

But another question arises, which brief of counsel raises

—the important one, on which we are without help from the briefs filed by counsel. While the decree was actually entered June 30, 1890, the term of court began June 23d. It is contended that we must begin to compute time against the bill of review from June 23, 1890. This is practically an important question. When do you commence to compute time against a bill of review, or writ of error or appeal, or petition of a non-resident for rehearing, and in other instances that may occur in practice? What is the date of rendition of a decree or judgment, the first day of the term, or the date of actual entry of record? I incline to think the date of actual entry has been used in practice. It is strange that though works on appeal discuss the subject of limitation of appeals, and limitations generally, they do not just meet this point. I have found nothing exactly upon it. "The term of a court is in legal contemplation as one day, and, though it may be open many days, all its acts refer to its commencement, with the particular exception in which the law may direct certain acts to be done on certain other days. It is seldom necessary that the day of any proceeding should appear, in making up the record, distinct from that of the beginning of the term, though a minute may be kept of each day's doings. Nor is it necessary that there should be adjournments from day to day, after the term is once opened by the judge; nor, if there should be, that they should be recorded, in order to preserve the authority of the court to perform its functions. The court may in fact not adjourn during the whole term, but be always open, though, for convenience of suitors, an hour of a particular day, may be given for their attendance. If the record state the time of doing an act, as the statement is unnecessary, so it is harmless surplusage, unless the day be beyond the period to which the term legally extends." So said the Supreme Court of North Carolina in *State* v. *Martin*, 2 Ired. 122. I think it a correct statement of the law, as the common-law certainly considers a term of court, though running over divers days, one day. 1 Lomax, Dig. 287.

Judge Tucker said in *Dew* v. *Judges*, 3 Hen. & M. 27: "The term 'session,' when applied to courts, means the whole term;

and in legal construction the whole term is construed as but one day, and that day is always referred to the first day, or commencement of the term." I hardly think that because our statute contemplates adjournment from day to day, and provides that each day's proceedings shall be separately recorded and signed by the judge, it cuts up the term into separate days, and individuates each day from another, and changes the common-law rule.

By reason of this rule that the whole term is one day, the common rule was that a judgment rendered on any day has relation to, and is a judgment of, its first day. Tidd, Prac. 547; 1 Lomax, Dig. 287; 1 Black, Judgm. § 441; 2 Freem. Judgm. § 369; *Farley* v. *Lea*, 32 Am. Dec. 680. This doctrine or rule had been always recognized in Virginia before we had a statute, but is now embodied in a statute, as regards the effect of the judgment as a lien. Code, c. 139, s. 5; *Society* v. *Stanard*, 4 Munf. 539; *Coutts* v. *Walker*, 2 Leigh 268; *Skip-with* v. *Cunningham*, 8 Leigh 272; *Withers* v. *Carter*, 4 Gratt. 418 (Baldwin, Judge).

While this is settled as to judgments, I had some question as to the interlocutory acts of courts generally, though they would seem to fall under the general rule. In *Foust* v. *Trice*, 8 Jones (N. C.) 490, it is stated that all acts of court, by relation, stand as if done on the first day, and it was held that an order of continuance related to the first day. A plea has been held to be a plea as of first day. Opinion in *Pope* v. *Brandon*, 20 Am. Dec. 49; note to section 442 of 1 Black, Judgm. But this was a final decree, and, in this regard is to be deemed a judgment. But this fiction of relation of judgments to the first day of a term is not without exception. It applies to cases where the judgment could have been rendered, but not to a case where it could not have been rendered, as where on the first day the case was not in condition for judgment. *Wynne* v. *Wynne*, 1 Wils. 42; *Swann* v. *Brocme*, 3 Burrows 1596; *Coutts* v. *Walker*, 2 Leigh. 278; *Withers* v. *Carter*, 4 Gratt. 416, 418; *Brown* v. *Hume*, 16 Gratt. 465; *Yates* v. *Robertson*, 80 Va. 475.

Now, this case was not in a condition to warrant a decree of confirmation of sale until June 30th, as no report of sale

was filed till then, so far as the record shows, and there could not be such a decree without such report. Hence we can not commence to compute time from the 23d of June, and in no view was the bill of review barred. The court gave that as the reason for dismissal, but the action of a court may be stated to be on an 'insufficient reason, and yet be right for a different reason. The reason given is immaterial, and the question in the appellate court is, is the decision, for any reason, correct? Opinion in *Henry* v. *Railroad Co.*, 40 W. Va. 234 (21 S. E. Rep. 863); *Shrewsbury* v. *Miller*, 10 W. Va. 115. Then, is the dismissal of the bill of review, for any reason, correct? It is not based on newly discovered matter, but on error of law apparent on the decree of confirmation. In the first place, I think it is demurrable. It does not recite, or even refer to the bill, 'the basis on which the superstructure or proceedings stand, and does not tell the court what proceedings had been had therein save that a decree had been pronounced confirming a certain sale, which presupposes a prior decree or decrees, and does not comply with the law of equity pleadings regulating bills of review. *Amiss* v. *McGinnis*, 12 W. Va. 371; Story, Eq. Pl. §§ 420, 638.

One ground for relief which it assigns is 'that an attorney for Sallie P. Dunn and her husband, in the case, attended the sale, and bid in the property for her, so announcing, and that 'this had the effect to prevent bidding, and that a report' of sale to her was filed, and delivered to the judge for action, but before decree it was modified so as to show the attorney as the purchaser, and was so confirmed. This is said to be error of law—to confirm a sale to an attorney of the parties. Without inquiry as to whether this fact of the relation of the attorney and client is a fact so appearing on the face of the decree, as to warrant a bill of review, I will say that it is only the clients of the attorney who have cause of complaint. What matters it to the parties filing the bill of review that the purchaser was an attorney of hostile parties? It is only because of the fiduciary relation to his clients that the attorney can not purchase. The act is only voidable on the objection of his clients. *Newcomb* v. *Brooks*, 16 W. Va. 32. A person

can not complain of an error by bill of review, unless it aggrieves him, any more than he can by appeal or writ of error. *Laidley* v. *Kline*, 25 W. Va. 211. Mere error, not aggrieving a party, will not reverse. *Fant* v. *Lamon*, 27 W Va. 229. And the act being only voidable, at the election of the client, it would not be ground of a bill of review or error, but the subject of an original bill, even at their instance.

Another point of error alleged in the bill of review is that the will empowered two executors to sell, whereas one only made the sale. On this point the question arose in my mind as to what parts of the record we can look to in solving it. If we can look only to the decree of confirmation—the only one mentioned in the bill of review—we find that its language negatives the allegation of the bill that the sale was made by one only of the executors, as it recites that the case was heard on the papers before read, and "the report of sale made by the plaintiffs," and both were plaintiffs. To sustain this allegation, we must look at something else. Can we look at the report of sale, and other decrees? There is confessedly difficulty and confusion, at least, in practical application of the rules on this subject. As the rule is stated in Story, Eq. Pl. § 407, to sustain a bill of review for error of law apparent on the face of the decree, you must not find it by looking into evidence, but, taking the facts as stated on the face of the decree, you must find the error there, or not at all; that is, you can look to the decree only, and thus, if the facts are not set out in it, a bill of review does not lie. The practice in England, where the rule originated, was to set out the facts found by the court from the pleadings and evidence. As thus limited, the ground for a bill of review, under our practice, has narrow scope; for our practice, and I think the proper one, is not to detail the facts found true by the court in a decree, but after bringing the cause on upon the various pleadings, exhibits, depositions, *etc.*, essential to a full presentation of the facts, to simply decree the relief given. But I think at present the rule is broadened; that is, the scope of a bill of review. You can not look to depositions, nor can you correct an erroneous finding or decision of fact on the evidence, which you can only do

on appeal; but you can look to the bill and other pleadings, and to all decrees and orders. I repeat: You can not look to evidence; you can not find fault with the decisions of facts by the court, and turn to the depositions or other evidence to prove it wrong; but you can look to all the pleadings on both sides, and take the facts in them admitted, or the facts stated in the decree as facts found by the court, and upon those facts show that the decree is wrong in law. You can inspect the pleadings and their exhibits, consider the facts therein admitted, and inspect all decrees, orders, or proceedings, and take the facts in them stated by the court as facts found by it, and show from them that the deree is, in law, erroneous. If there be error in the decree, and you can show it by the record thus limited, you can cure it by bill of review in the same court which pronounced the decree; otherwise, you must seek relief from that error by appeal. *Thompson* v. *Edwards*, 3 W. Va. 659; *Nichols* v. *Nichols' Heirs*, 8 W. Va. 174; *Rawlings* v. *Rawlings*, 75 Va. 76, 88; *Thomson* v. *Brooke*, 76 Va. 160; *Hancock* v. *Hutcherson*, *Id.* 609; Bart. Ch. Prac. 3334; *Core* v. *Strickler*, 24 W. Va. 697.

Under these principles we can look to the report of sale, I think, to support the bill of review. It shows that only one of the executors was present at the sale, but the other recognized and approved the sale by uniting in the report. Now, it may be—likely is—true that if one executor had acted throughout alone in the sale, without approval, his act would be void as an act under the will, which conferred a mere naked power, and that joint. *Johnston* v. *Thompson*, 5 Call. 248; *Deneale* v. *Morgan*, *Id.* 407; 1 Lomax, Dig. 362; 2 Pow. Dev. 294; *Brown* v. *Hobson*, 13 Am. Dec. 187; *Floyd* v. *Johnson*, *Id.* 255. It can hardly be that a sale would be set aside merely because both were not at the auction; so he concurred in the act by ratification. And, besides, a decree in the case authorized either or both the executors to make the sale. Even if that decree were erroneous, in departing from the will in providing for an execution of the power by one, it would be good until reversed. The court had the will, the property, and all the parties before it, for construction of the will, for its execution, and the administration of

assets under it, and I would hesitate long to say, even on appeal, it was for this cause erroneous. But there it stands, valid, and vindicates the sale by one executor. It was an appealable—indeed, a final—decree. *Core* v. *Strickler*, 24 W. Va. 689. Relief against any error in it was barred by time against an appeal or bill of review, when the bill of review was filed. Therefore, even on appeal from the subsequent decree of confirmation, no error in the former decree could be corrected, as on appeal from a later decree there is no right to reverse prior decrees, appealable, rendered more than the statutory period prior to the taking of the appeal. *Tiernan* v. *Minghini*, 28 W. Va. 314. Therefore, this bill of review could not possibly reach the decree authorizing a sale by one of the executors, and, as it stood firm, even a sale by one would be good and irreversible And, as just occurs to me, that decree authorizing both or either to sell was affirmed by this Court; and there can be no bill of review for error of law to a decree of this Court, or a decree affirmed by it. *Henry* v. *Davis*, 13 W. Va. 231. Moreover, the court is the seller. It could confirm on a report by one, even if it had jointly, and only jointly, authorized two to act. The commissioner only receives bids, in place of the court. Such a matter is 'considered only on confirmation. Judge Snyder said a court could ratify a sale even by one not authorized to make it, and based this statement on Freem. Jud. Sales, § 42. See *Core* v. *Strickler*, 24 W. Va. 697. This because the court is the seller. He said, as I say in this case, it is not such an error as would be ground of reversal, in absence of evidence of actual prejudice to the party from it. I can not see how it prejudices the party, whether one or both cried the property, or were present at the sale. It does not appear affirmatively that there was prejudice to the parties complaining, and this irregularity is no ground for setting aside the sale. *Core* v. *Strickler*, *supra*.

For these reasons, I think there is no error in dismissing the bill of review, taking that bill on the case presented by itself. With a modification in a matter of costs charged to Sallie P. Dunn, the decree is affirmed.