## CHARLESTON

### STATE *v*. SUTTER.

Submitted September 12, 1912.   Decided November 26, 1912.

1. CRIMINAL LAW—*Evidence—Competency—Evidence Illegally Obtained.*
     It is not ground for excluding as evidence a bottle of cocaine or other articles of incriminating evidence, even though forcibly taken from the accused or by putting him in fear, or that it was obtained by illegal search of the person and seizure. (p. 372).

2. ARREST—*Authority to Arrest—Necessity for Warrant.*
     Either an officer of the peace or a private individual seeing a felony committed may lawfully arrest the felon without waiting for a warrant of arrest.   (p. 373).

3. CRIMINAL LAW—*Trial—Conduct in General—Presence of Accused.*
     Upon a trial for felony, after close of the evidence, the judge and the attorneys for both sides go into another room, leaving the accused and jury in the court room, and in that other room a motion to strike out the evidence of a state witness is made by the accused, and argued, and decided against the accused.   On discovery of the absence of the accused, he is sent for, and the judge offers to allow him to again make such motion, and argue it, but the accused declines to do so.   Such absence of the prisoner demands a new trial.   (p. 373).

Error to Circuit Court, Pocahontas County.

H. Clare Sutter was convicted of keeping in his possession cocaine with intent to sell the same, and brings error.

*Reversed, and New Trial Granted.*

*N. C. McNeil* and *P. T. Ward,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

BRANNON, PRESIDENT:

An indictment against Clare Sutter contained two counts, the first charging the unlawful sale of cocaine, the other the keeping in his possession cocaine with intent to sell it. He was tried on the second count, found guilty by a jury, and sentenced to the penitentiary for five years.

We think the motion to quash the second count was properly overruled. It is based on section 2 of chapter 16, Acts of 1911. The count charges that Sutter "did unlawfully and feloniously have in his possession cocaine and mixtures containing cocaine, with intent then and there to sell, give away and dispense the same, the said Clare Sutter not being then and there a licensed manufacturing pharmacist or chemist, or a wholesale or retail druggist, nor a licensed physician, dentist or veterinary surgeon." The motion suggested that the second count "fails to negative various methods under the statute under which the defendant might have cocaine in his possession legally." The count negatives the exceptions contained in the enacting clause. That conforms to the rule. The further provisions saying that the possession of cocaine, except under certain circumstances, shall be evidence of intent to sell, are not in the enacting clause, but relate to evidence on the trial. The latter exceptions need not be negatived in the indictment.

A state witness, a constable, having a warrant for arrest of John Doe and Richard Roe, suspecting the sale of cocaine, had a party to apply to Sutter and Murray to purchase it, and the parties went to a room, and the constable watched, and seeing Sutter in the act of sale rushed into the room with a pistol, commanded Sutter to "throw up his hands," searched him, and found on his person three bottles of cocaine, one of which was given in evidence to the jury. The admission of this evidence is pointed out as error. It is said that it was obtained by unlawful search of the person and by force or threat of shooting. Wharton's Crim. Evidence, (10th ed.), sec. 518*g*, reads: "It is not ground for exclusion of an article of demonstrative evidence that it was taken from the possession of the accused, even though it was forcibly taken from him, or that it was obtained by illegal search and seizure." See *Shield* v. *State*, 53 Am. St. R. 17. "Courts do not pause to open up a collateral issue in a

trial upon the question whether a wrong has been committed in obtaining information possessed by a witness." *Cluett* v. *Rosenthal,* 43 Am. St. R. 872. "Though papers and other subjects or evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if pertinent. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question. This principle is regularly applied to incriminating materials—tools, liquor, documents, etc.—obtained by unlawful search of premises, or unlawful search of the person, or by other unauthorized means." 1 Greenleaf Ev., sec. 254a. That great work, Wigmore on Ev., vol. 3, sec. 2264, ably discusses and sustains this principle. But why go from home, when we have *State* v. *Edwards,* 51 W. Va. 220, holding it?

It is argued that the arrest of Sutter was illegal, there being no warrant for him, the warrant being for fictitious persons. The officer saw the offence committed. Is it necessary to discuss this matter? It is elementary law found in Bishop's Crim. Procedure, sec. 165-166, that one who sees an act of treason or felony may arrest the offender. 3 Cyc. 884, lays down, "It is both the right and duty of a private person present when a felony is committed, to apprehend the felon without waiting for the issuance of a warrant." An arresting officer may search the prisoner and remove from his person for evidence articles found. *Ex Parte Hurn,* 25 Am. St. R. 23. But why is this point made when later a regular warrant was issued, and the party is now under indictment? The court could not turn Sutter loose though the arrest had been unlawful.

After the state had closed its evidence, the judge and attorneys went to another room than the court room, and there a motion to strike out the evidence of the constable was made, argued and decided against Sutter, when it was discovered that Sutter was not present, and the court had him brought in and stated to him and his counsel that the court would again hear that motion argued; but the prisoner's counsel in his presence declined to accept the offer. Following many former decisions it is not necessary to re-discuss this subject. We feel bound

by them to reverse the judgment and grant a new trial. *State
v. Parsons,* 39 W. Va. 464; *State* v. *Shepherd,* 49 W. Va. 452;
*State* v. *Detwiler,* 60 W. Va. 583.

*Reversed and New Trial Granted.*

WILLIAMS, JUDGE, (*dissenting*) :

I think the record in this case shows that there has been a
full and substantial compliance with section 2, chapter 159, Code
1906. After the motion to exclude the State's evidence had been
argued and overruled by the judge, in the absence of the
prisoner, he was sent for, and his counsel was requested by the
judge to repeat his argument in the prisoner's presence and he
declined. I think that amounted to a waiver of his right to hear
it. I admit there are decisions by this Court and by the court of
Virginia in support of the majority opinion; but I think some
of them are so extremely technical that they should be over-
ruled. The ruling in the present case is even more technical, in
my opinion, than any previous decision on the question. The
court of Virginia has evinced a disposition, in its more recent
decisions, to break away from the technical rulings in earlier
cases. In *Lawrence's Case,* 30 Grat. 845, point 4 of the syllabus
reads: "It is not necessary that the prisoner should be present
when the jury which had been sent out for the night is brought
in in the morning and sent to their room." And in *Jones' Case,*
79 Va. 213. it was held that: "It is not error wherefor a
verdict of guilty will be set aside, that in the absence of the
prisoner, on the morning of the second day of the trial, the jury
is called and sent to their room to consider of their verdict, the
jury afterwards returning into court, and in the presence of the
prisoner, rendering their verdict."

Notwithstanding the statute requires a prisoner charged with
a felony to plead in his own proper person, he may nevertheless
plead guilty; and if he may waive a trial and plead guilty, may
he not also waive his right to be present at the hearing of a
motion? It is the universal practice of trial courts, when testi-
mony is offered, the relevancy of which, at the time, the judge is
unable to see, to call opposing counsel to the bench, and to hear
their arguments in whisper, and then rule upon the motion.
In such case, technically speaking, the prisoner is present;

but, in fact, he is as much in ignorance of what was said by the judge and opposing counsel as if the argument had been had in a room apart from him. Yet I do not imagine any court would be so technical as to reverse a verdict in such case. There is no real distinction between that case and the present one. To assume .that the prisoner was prejudiced by not being present at the argument on the motion in this case, would be a reflection upon the integrity of both the counsel and the court. The prisoner's constitutional right has not been violated, and there has been a substantial compliance with the statute. It is clearly apparent to my mind that the prisoner had a fair and impartial trial, and that the error complained of did not prejudice him in any degree. Therefore, I would affirm the judgment.