# CHARLESTON.

## STATE V. SAMUEL McCAUSLAND.

Submitted September 10, 1918.   Decided September 17, 1918.

1. CRIMINAL LAW—*View of Premises—Absence of Defendant.*

   Upon the trial of one charged with murder, it is error to take the jury to the scene of the alleged crime, and there in the absence of the defendant have the same re-enacted in the presence of the jury, for the purpose of determining whether or not a witness who testified as to how the killing occurred could have observed the same from the place at which he claimed to have been at the time.  (p. 527).

2. SAME—*Trial—View of Premises.*

   Where in the trial of any case it appears to the court that a view of the premises involved in the hearing would enable the jury to arrive at a better conclusion, or would better inform it as to actual conditions, it is proper for the court to allow such view.  (p. 527).

3. SAME—*View of Premises—Consideration as Evidence.*

   Such a view is for the purpose of informing the jurors upon any pertinent inquiry being made in the trial of the case, and the things which they observe upon such view, so far as they are pertinent to show anything proper to be proved, are to be considered by them the same as any other evidence introduced in the case.  (p. 527).

4. SAME—*Presence of Defendant—Waiver.*

   One charged with a felony cannot waive his right to be present at the time of the introduction of all evidence offered upon the trial.  (p. 529).

5. SAME—*Appeal—Bill of Exceptions—Contradicting Court's Order.*

   A bill of exceptions taken and properly signed showing that the accused was not present when a view was had by the jury of the scene of the tragedy does not contradict the court's order showing that he left the court house with the jury, and returned with it after the view was had.  The bill of exceptions simply supplies facts not shown by the order.  (p. 530).

6. SAME—*Conduct of Court—Examination of Witnesses.*

   It is the duty of the trial judge in any cause to refrain from expressing any opinion upon the weight to be given to the evidence of any witness, but it is likewise his duty to see that in the examination of witnesses they understand the questions pro-

82 W. Va.

pounded to them before they are required to answer, and that counsel in asking a question does not place upon the witness's former statements a strained or unwarranted construction. (p. 531).

7.  SAME—*Evidence—Children of Deceased.*

Upon the trial of one charged with murder it is improper to admit evidence showing the number of the dead man's children and their ages, when the family of such deceased party is in no wise connected with the difficulty which resulted in his death. (p. 532).

8.  JURY—*Selection—Trial for Felony—Disqualification by Relationship.*

In the selection of a jury for the trial of one charged with felony it is not error for the trial court to reject a juror who stands in such a relation to the accused that his judgment may be affected, or he may be embarrassed thereby, even though such relationship may not amount to a ground of challenge for cause, when his place is taken by another juror entirely free from any such relationship. The trial court in the selection of a jury may exercise a sound discretion in this regard, and when the rejection of a juror is based upon such a reason, and his place filled by one entirely free from any such exception, a verdict will not be set aside because thereof. (p. 532).

9.  HOMICIDE—*Character of Deceased—Admissibility of Evidence.*

Where one charged with murder admits the killing and attempts to justify his act upon the ground of self defense, it is proper for him to prove that the deceased was a violent and dangerous man, not only at or about the time of the killing, but that he had been such continuously for many years prior thereto. (p. 533).

10.  SAME—*Evidence—Verdict of Coroner's Jury.*

Upon the trial of one charged with murder it is improper to admit as evidence the verdict of a coroner's jury, either for the purpose of proving the death of the deceased, or the agency of the accused therein. (p. 533).

11.  CRIMINAL LAW—*Instructions—Reasonable Doubt.*

Upon the trial of one charged with felony, it is improper to instruct the jury that they should doubt as jurors only when they doubt as men, as such an instruction is in effect an invitation to the jury to disregard the oath taken by it before entering upon the trial of the case. (p. 534).

12.  SAME.

Upon a trial of one charged with felony an instruction which directs the jury to acquit the accused, if any single member thereof has a reasonable doubt as to his guilt, is properly refused. (p. 535).

Error to Circuit Court, Mason County.

Samuel McCausland was convicted of involuntary manslaughter, and brings error.

*Reversed, and cause remanded.*

*Rankin Wiley* and *B. H. Blagg, S. B. Avis* and *Somerville & Somerville,* for plaintiff in error.

*E. T. England,* Attorney General, and *Henry A. Nolte,* Assistant Attorney General, for the State.

RITZ, JUDGE:

The defendant, upon the trial of an indictment charging him with murder, was convicted in the Circuit Court of Mason County of involuntary manslaughter, and prosecutes this writ of error to reverse that judgment, upon the grounds that the jury was permitted to make a view of the scene of the tragedy in his absence, that the court made improper remarks in the presence of the jury during the trial of the case, that improper evidence was permitted to go to the jury, and proper evidence offered by the defendant rejected, and that the jury was improperly instructed.

After the State had closed her case an order was made for the jury to view the scene of the tragedy. Pursuant to this order the jury was taken to the place where the killing occurred in the custody of the sheriff, accompanied by the judge, and by the accused, as well as the counsel on both sides. After a general view of the ground was had the prisoner, as he states, believing that the view was over, went to his house nearby to get his mail and attend to some other business matters, and while he was there a demonstration was had by the jury for the purpose of determining whether the parties to the tragedy could have been seen from a point at which a witness testifying for the state claimed to have seen the killing. This witness claims to have been at her house, which she testified was about a hundred yards from the scene of the tragedy, and from that point saw the defendant strike the deceased with a shovel while he was retreating. The contention of the defendant was that the scene of the tragedy was not visible from this house, and that

the distance between the two points was about three hundred and fifty yards instead of one hundred yards, and it was for the purpose of clearing up this conflict that this demonstration was had in the absence of the accused. The bill of exceptions recites that the attention of the court was called to the absence of the accused at the time by his counsel, and exception taken to the action of the court in permitting the experiments to be made. It is earnestly contended by the defendant that this was error, that the demonstration made by the jury on that occasion was the taking of evidence, which, being done in his absence, is ground for reversal. As to whether or not a view by the jury of some place connected with the matter before it is the taking of evidence is a question upon which there is a very decided conflict of authorities. Many of the courts hold that it is not, but is a part of the deliberations of the jury in arriving at a verdict; others say it is not the taking of evidence, but is simply allowing the jury to see the physical conditions in order that it may better understand the oral testimony; while still others assert that it is the presentation of physical conditions to the jury from which it may be informed as to some pertinent matter of inquiry. The purpose of introducing evidence is to inform the jury of the transaction in regard to which the trial is had, and anything pertinent to that end is proper for the purpose. Frequently in the trial of such cases material objects are introduced before the jury. In homicide cases the garments worn by the deceased are often introduced for the purpose of showing the place at which the wounds were inflicted. Can it be said that this is not evidence? It is stronger and more convincing to the jury than the oral testimony of any witness could possibly be. There can be no difference in the proffer of objects to the jury in the court room and such exhibition by taking the jury to view such objects, when they are not susceptible of being brought into court. The reason the jury is taken to view the ground is simply because it is physically impossible to bring it into the court room, and it is therefore necessary, in order that the jury may have all of the light obtainable upon the subject to which the inquiry is directed, that

it be taken and shown these objects which form a part of the subject of inquiry. In this case can it be doubted that the actual demonstration made upon the ground to show whether or not certain objects were visible from a certain point was the strongest sort of evidence that could be introduced upon that question? Likewise, the view of the jury was the very strongest evidence as to the distance between the scene of the tragedy and the place where the witness was standing whose testimony was questioned. A dozen witnesses might testify that they observed this tragedy from a certain point, and the jury would not believe a single one of them, if from the observation made upon the ground the physical conditions were such as to preclude the possibility of the truth of the witnesses' statements. This view is fully sustained by what we consider the better authorities. 2 Wigmore on Evidence, p. 1372, etc. and authorities there cited; 3 Jones on Evidence, § 408 etc.; Underhill on Criminal Evidence, § 230; Bishop's New Criminal Procedure, § 965; Wharton's Criminal Evidence, § 312; *People* v. *Thorne*, 156 N. Y. 286, 42 L. R. A. 368. To the report of this case in the Lawyers Reports Annotated is an elaborate monographic note in which a large number of the authorities are cited. While this court has not in so many words said that such an inspection is submitting evidence, it has done so negatively. In the case of *State* v. *Henry*, 51 W. Va. 283, it was held to be improper to instruct the jury that it should not take into consideration anything it saw, or any impressions it received at the view of the premises. This was equivalent to saying that the things it saw there and the impressions it received from that view were to be considered by it in settling the issue of fact involved, and if this is true surely it is evidence. A like holding was made in the case of *Fox* v. *Railway Co.*, 34 W. Va. 466.

The Attorney General contends, however, that even conceding this position the accused waived his right to be present on this occasion. The undisputed facts in regard to this, as shown by the bill of exceptions, is that he, believing the view to have been concluded, left the place and went to his residence; that at the time the demonstration was made by the jury above referred to the court's attention was called to

this fact and exception taken to its being proceeded with in the absence of the accused. Under our decisions the right of the accused in a felony case to be present at every stage of the trial is one which he cannot waive, and the decisions cited by the Attorney General holding that such a right is one that can be waived are not in conformity with our holding; but even if this was such a right as could be waived, we cannot say that it was waived in this case because, while it may be said that the accused before leaving the place should have determined definitely that the view was concluded, the court's attention was called to the fact of his absence at the time this further view was entered upon and exception taken to the same being made in the absence of the accused, and this would indicate that instead of waiving the right he, by his counsel, was insisting upon it. In the case of *State* v. *Sutter*, 71 W. Va. 371, it was held that it was error for the court to pass upon a motion to exclude the evidence in the absence of the accused, even though the ruling of the court upon the motion was proper. In the case of *State* v. *Snider*, 81 W. Va. 522, 94 S. E. 981, we held that it was improper for the court to pass upon the admissibility of evidence offered in the absence of the accused, even though the court's ruling thereon was correct. In *State* v. *Detweiler*, 60 W. Va. 583, following many decisions there cited, it was held to be reversible error to allow any evidence to be introduced to the jury in the absence of the accused. Clearly under these decisions this re-enacting of the tragedy before the jury in the absence of the accused was error.

But the Attorney General says that the record does not show that the accused was absent. He argues that the court's order shows that the jury in charge of the sheriff, and accompanied by the judge and the accused, left for the scene of the tragedy to view the premises, and further shows that after viewing it the jury in charge of the sheriff, and accompanied by the judge and the accused, returned to the court room. His contention is that this order shows the presence of the accused during all of the time. The authorities he cites go no further than to say that if there were no other showing this record would be sufficient to show the presence

of the accused. It has been held that where the record shows that the accused was brought into court, and at the conclusion of proceedings on a particular day was again remanded to jail, his presence during all of the proceedings of that day is presumed in the absence of some other showing. But in this case a bill of exceptions is signed by the judge and made part of the record, from which it appears that during a part of the time the accused was in fact not present. This is not a contradiction of the order of the court, but it is simply amplifying and supplementing it. Of course, parol evidence would not be admitted to prove that the prisoner did not leave the courthouse with the jury, nor could it be introduced to show that he did not return to the courthouse at the time indicated in the order, but as to what happened in the interim the order does not undertake to show. This is supplied by the bill of exceptions duly signed and made a part of the record, and this is the way that these matters are brought to the attention of the appellate court in all of the cases above cited. There is no attempt to contradict the court's order by this bill of exceptions, but simply to make part of the record the things which transpired that are not shown by the order, and this is the proper function of a bill of exceptions.

During the trial of this case a number of exceptions were taken to remarks made by the presiding judge. It is contended that these remarks were prejudical to the accused in that they tended to express the opinion of the trial judge as to the credit certain witnesses were entitled to, or as to the probative force of certain evidence introduced in the case. Of course the presiding judge ought not to make any remarks in the presence of the jury that indicate what he believes as to the testimony of any witness, or as to the credit to be given to the testimony of any witness. He should act with entire impartiality between the parties, but it is likewise his duty to see that witnesses clearly understand the questions propounded to them before they are required to answer. In this case an effort was made to contradict the testimony of a witness by alleged conflicting statements made during the progress of his examination, and practically all of the re-

marks of the presiding judge, of which complaint is made, were in connection with this witness's testimony. After reading the whole of it we are convinced that the only impression that can reasonably be drawn is that the judge was only seeking to have the witness fully understand the questions asked him before requiring him to answer, and to prevent counsel from giving to the language theretofore used by the witness a strained and unwarranted construction.

Upon the trial the widow of the deceased was used as a witness, and the state, over the objection of the accused, proved by her that the accused was the father of several children, one of whom was born after his death. This evidence did not in any way prove any issue involved in the case. The trouble between the accused and the deceased did not arise out of any matter with which his family was in any wise connected. The evidence was patently introduced for the sole purpose of creating sympathy in the minds of the jury for the widow and the orphan children, manifestly an improper purpose. This evidence should not have been admitted.

Upon the trial of this case exception was taken to the action of the judge in excluding a juror by the name of Harold Bright. An examination of this juror upon his *voire dire* disclosed that he was a brother-in-law of John McCausland, a brother of the accused, and upon this the court substituted another juror in his place. The rigid rule at one time in force as to the right of the accused in this regard is no longer the law in this state. The trial court has some discretion, and while the juror may be, strictly speaking, free from exception, still if he sustains such relations to one of the parties as would indicate that he might be in some manner affected or embarrassed thereby, the action of the court below in rejecting him will not be cause for reversal. It is better in the trial of all cases to have jurors that are free from any embarrassing relations to either of the parties. In the exercise of its discretion the trial court cannot arbitrarily reject jurors, and in that way secure the particular men whom he desires to try the case, but where the rejection is based upon a substantial reason, as in this case, we see no good grounds for exception thereto. *Thompson* v. *Douglass*, 35 W. Va. 337-340.

The defendant offered evidence showing the character of the deceased for violence, and as being a contentious and dangerous man, his attempt in this case being to justify the killing upon the ground of self defense. This evidence was admitted so far as it showed the character or reputation of the deceased in that regard at the time of his death or immediately prior thereto. The defendant, however, sought not only to show his reputation and character at that time, but to prove by numbers of witnesses that his character and reputation for many years had continually been that of a very violent, contentious and dangerous man. This evidence was rejected so far as it tended to show this trait of character at periods remote from the death of the deceased. The accused contends that inasmuch as he relies upon self defense, a material element thereof was the kind of man with whom he was dealing. He also contends that he should have been allowed to prove not only that the deceased was violent and dangerous at the time or immediately prior to the killing, but that he should have been allowed to introduce evidence of his character in this regard covering as much of his life as he could, so long as the period covered was unbroken. We think this contention is well taken. Evidence of the character of the deceased in this regard at or about the time of the killing is, of course, pertinent, and was admitted by the court below, but how much stronger would this evidence be if it could be shown that this quarrelsome or violent disposition was not one which was only attributable to him for a short time, but that he possessed such traits of character for many, many years. The jury would get a very much better view of his real disposition in this regard if they were allowed to hear evidence of his character in this regard covering as much of his past life as was readily available.

The action of the court below in permitting the state to introduce in evidence the verdict of a corner's jury is also assigned as error. This verdict was not proper evidence in this case, and ought not to have been allowed. It did not, however, in any way affect the accused, inasmuch as the coroner's jury only found that the deceased came to his death from a blow on the head, and did not charge anyone

with having inflicted that blow. That this was the fact everybody admitted, and it is difficult to see how the admission of this verdict could have injuriously affected the accused.

Exceptions were taken to certain instructions given on behalf of the state. A number of these instructions are said to be bad because they would allow the jury to assume that the weapon used, being a long-handled shovel, was a deadly weapon without any proof as to its weight, size or character. We do not think there is merit in this contention. The approximate weight and size of such shovel is a matter of such common knowledge that the jury could very well find that the use of one as a weapon would make it of deadly character.

Instruction No. twelve given on behalf of the state is, however, objectionable. It instructs the jury that it is the sole judge of the evidence, and that it may believe or refuse to believe any witness. This would permit the jury to reject the testimony of a witness arbitrarily. It is true the jury is the sole judge of the evidence, but it cannot without reason refuse consideration to the testimony of a witness, and this element should have been included in the instruction.

Instruction No. eighteen is also improper. This instructs the jury in one paragraph of it that the jurors should only doubt as jurors when they would doubt as men, and when they do not doubt as men they should not doubt as jurors. This statement to a jury, we have disapproved. *State* v. *Worley,* 82 W. Va. 350, 96 S. E. 56, and authorities there cited. *State* v. *Taylor,* 57 W. Va. 228.

The court refused to instruct the jury, on motion of the defendant, that it must believe beyond a reasonable doubt that the defendant was guilty of the crime charged before he could be convicted, and that if a single juror had a reasonable doubt of such guilt, then the jury should return a verdict of not guilty. This instruction was manifestly incorrect. It would compel the jury to return a verdict of not guilty when eleven of the jurors were thoroughly satisfied of the defendant's guilt, and one had a reasonable doubt thereof. Such a condition would only result in a mistrial instead of in a verdict of acquittal.

The judgment of the Circuit Court of Mason county will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and cause remanded.*