STATE *ex rel.* WILLIAM DANDY

*v.*

WILLIAM THOMPSON, JUDGE, ETC., *et al.*

(No. 12285)

Submitted January 8, 1964.    Decided February 25, 1964.

*Stanley E. Preiser, W. Dale Greene*, for relator.

*C. Donald Robertson*, Attorney General, *Andrew J. Goodwin*, Assistant Attorney General, *Arthur T. Ciccarello*, Assistant Prosecuting Attorney, for respondents.

CAPLAN, JUDGE:

In this original proceeding, instituted in this Court on October 8, 1963, the petitioner, William Dandy, seeks a writ to prohibit the defendants, Honorable William Thompson, Judge of the Intermediate Court of Kanawha County, and Charles Walker, Prosecuting Attorney of Kanawha County, from proceeding further in the prosecution of the petitioner upon that certain felony indictment returned by the Grand Jury of Kanawha County at the June Term, 1963, of said court. The petitioner further seeks the dismissal of that indictment.

On October 14, 1963, this Court granted a rule against the defendants returnable October 22, 1963. At the request of the defendants for additional time in which to take further evidence, the case was continued until the January Term, 1964. This case was submitted for decision on January 8, 1964, upon the pleadings and depositions and upon the briefs and arguments of counsel.

William Dandy was indicted for a felony on two counts. Upon his motion the first count was dismissed. He was then brought to trial on the second count which charged him with buying and receiving, aiding in concealing and

transferring certain stolen cigarettes to a person other than the owner thereof.

During the first day of the trial, August 5, 1963, the State, through its first witness, attempted to introduce into evidence certain cigarettes allegedly obtained by that witness. The petitioner objected to the admission of such cigarettes in evidence, claiming that the building from which they were taken was under the control of the petitioner and that such evidence was inadmissible inasmuch as it was seized without a search warrant.

The court, the petitioner and counsel for both parties then retired to chambers for the purpose of determining the admissibility of the cigarettes in evidence. Upon the hearing of evidence and argument of counsel the court concluded that the cigarettes were admissible. Subsequently, in open court and before the jury, the cigarettes in question were admitted as evidence in the case. The petitioner objected to the court's action and moved for a mistrial. This motion was overruled by the court. It appears from the record of the proceedings below that numerous motions for a mistrial were made on behalf of the petitioner during the trial.

After the State had concluded its case and had rested, the petitioner made several motions to exclude certain evidence and made further motions for a directed verdict, all of which were overruled by the court. The petitioner then proceeded with his defense. Thereafter, on August 8, 1963, certain evidence was introduced which tended to support the petitioner's theory relating to the admissibility of the cigarettes, the question into which inquiry had been made earlier in the trial. At this point the court declared a recess and requested the prosecuting attorney to further examine the law in regard to the admissibility of the cigarettes and to report his findings the next morning.

Upon complying with the court's request, the prosecuting attorney, on the morning of August 9, 1963, reported to the court that his research revealed that the

petitioner had a legal right to object to the search and, since the cigarettes were seized without a search warrant, they were inadmissible as evidence in the case. This session took place in the judge's chambers in the presence of the petitioner and his counsel. The petitioner, through his counsel, then moved to strike all of the testimony concerning the cigarettes and further moved to exclude the cigarettes as exhibits. The court expressed doubt that the error could be cured by a motion to strike the evidence. Counsel for the petitioner stated that if his motion to strike were granted the State's case could not be proved and that the petitioner would be entitled to a directed verdict of acquittal, for which he then moved. The court said it would not grant a directed verdict in favor of the petitioner, but would declare a mistrial. Defense counsel opposed the declaration of a mistrial and, after much discussion on this point, the court took a short recess.

After the recess, the record begins as follows: "Thereupon, the Court, counsel for the respective parties, and the reporter, retired to chambers, out of the hearing of the jury, with the defendant not present, where the following transpired:

"THE COURT: I am going to declare a mistrial; then if you have something you want to look into, we can consider it at a later date * * *."

Further resisting the action of the court in declaring a mistrial, counsel for the petitioner withdrew all prior motions for a mistrial and argued his position at length. Following further discussion between the court and counsel, the prosecuting attorney noted: "I might mention to your Honor, the defendant has not been present during this last session here in chambers, so we could not proceed with the trial any further anyway."

Immediately thereafter, the court, counsel and reporter returned to the courtroom where, in the presence of the petitioner, the court addressed the jury as follows: "Ladies and gentlemen of the jury, because of error which the court has committed in permitting certain evidence to

come into the trial, which the Court has concluded was not admissible, I am declaring a mistrial and discharging you from the case." Defense counsel objected to the action of the court and again moved for a directed verdict and a dismissal of the indictment. Hearing on these motions was set for August 30, 1963, and then continued until September 3, 1963.

Further hearings were held on September 3, 19 and 20, 1963, during which the petitioner filed motions of autrefois acquit and pleas in bar to further prosecution of that case. Arguments were heard on these motions and the court and counsel discussed the order to be entered. The motions of the petitioner were promptly overruled. The court entered its order declaring a mistrial, stating its reasons therefor and overruling certain motions of the petitioner. The order apparently was entered on September 20, 1963, although it appears in the order book of the Intermediate Court as of August 9, 1963.

The reasons stated by the court for declaring a mistrial were objected to by the petitioner and gave rise to the principal questions to be resolved in this proceeding. As reflected by the order, the court declared a mistrial because it had erred in permitting the cigarettes and the testimony pertaining thereto to be introduced into evidence, and for the additional reason that the petitioner was not present during a portion of the trial. The latter reason refers to the second session in the judge's chambers on August 9, 1963, the transcript of the record thereof showing the absence of petitioner.

Many issues are raised in this proceeding, but the controlling question is whether there was a manifest necessity for the court to declare a mistrial for the reasons stated by it, namely, the allowing of inadmissible evidence over the objection of the petitioner, and the absence of petitioner during part of the trial. It is vigorously asserted on behalf of the petitioner that it was improper for the court to declare a mistrial by reason of its allowing inadmissible evidence; that petitioner's motion to strike the evidence and subsequent motions for

a directed verdict should have been granted; and that the court's failure to so act should preclude further prosecution of this matter. The petitioner further urges that the mistrial could not be declared because of the absence of the petitioner for the reason that the court did not so state to the jury. Concerning the question of the petitioner's absence, depositions taken in this Court show, and it is readily admitted by the petitioner, that he was absent during a part of the proceedings in the court below. The petitioner nonetheless claims that since the court did not originally state that fact as a reason for granting a mistrial and, further, did not so inform the jury, it could not now validly declare a mistrial on that ground. Also, the petitioner claims that if he were absent, such absence did not occur during a material part of the trial.

Let us now consider the first ground assigned by the court for ordering a mistrial, namely, that it improperly permitted inadmissible evidence to be introduced into the case over the objection of the then defendant. In order for this to be proper and to prevent the mistrial from resulting in an acquittal, his action must satisfy the provisions of Code, 1931, 62-3-7. That section reads in part: "And in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge."

There being no question of disagreement by the jury, the issue presented is: Does mere error on the part of the trial court create a manifest necessity for a mistrial? We are firmly of the opinion that it does not. "The 'manifest necessity' in a criminal case permitting the discharge of a jury without rendering a verdict may arise from various circumstances. Whatever the circumstances, they must be forceful to meet the statutory prescription." Point 2, Syllabus, *State* v. *Little,* 120 W. Va. 213, 197 S. E. 626. While the term "Manifest necessity" has not been abstractly defined, we view it as the happening of an event, beyond the control of the court, which would require

the discharge of the jury and would permit a new trial without justifying a plea of double jeopardy. Such occurrences as the illness or death of a juror, the accused, the judge or counsel exemplify cases in which a manifest necessity exists which would warrant the discharge of the jury. In other words, where unforeseeable circumstances arise during the trial, making its completion impossible, a manifest necessity to discharge the jury exists and the defendant may again be tried.

However, as in the instant case, where the reason relied upon for discharging the jury, after the trial had begun and before a verdict, was an erroneous ruling of the court, a manifest necessity does not exist so as to meet the requirements of Code, 1931, 62-3-7. It was stated in Point 3 of the Syllabus of *State* v. *Little*, 120 W. Va. 213, 197 S. E. 626, "The power of a court in a criminal case to discharge a jury without rendering a verdict is discretionary; but the power 'is a delicate and highly important trust' and must be exercised soundly, else the discharge will become in effect an acquittal of the accused under the Constitution, Article 3, Section 5, which inhibits second jeopardy." That language illustrates the necessity for the proper exercise of discretion in such case.

Where the ground upon which the court relied to discharge the jury was a circumstance over which the court had control and which, by the exercise of due diligence, it could have prevented, no manifest necessity existed which would warrant the declaration of a mistrial. The action of the court, of which the petitioner here complains, was predicated, in part, on its own erroneous ruling. This was a matter over which the court had control. If the trial judge was satisfied that his former ruling in allowing certain evidence was wrong, he could have corrected it by granting the motion to strike. It is not the province of the court to determine whether the jury could or could not find a defendant guilty without such evidence. Once the trial begins jeopardy attaches and remains unless removed under the provisions of Code, 1931, 62-3-7. If such provisions are not satisfied the defendant is entitled to

plead former jeopardy and thus avoid further prosecution on the charge.

The following statement, to which we subscribe, is contained in *State* v. *Whitman,* 93 Utah 557, 74 P. 2d 696:

"It is not altogether, and at all times, within the discretion of the court to stop the prosecution and still hold the accused to answer to the same offense on a future charge. It may discharge the jury under peculiar circumstances in cases of necessity, for circumstances of such nature that neither the court nor the attorney nor the parties have any control over them. But to warrant this course there should be some emergency over which neither court nor attorney has control. State v. Callendine, 8 Iowa 288. We do not mean at present to define or designate any of the cases in which this practice may be pursued, but we all agree that a defendant ought in no case to be put on a second trial for the same offense where the jury has been discharged over defendant's objection, because the court did not like the conduct of counsel or because the court may feel it has erred in prior rulings."

We are of the opinion that the trial court abused its discretion in discharging the jury and declaring a mistrial for the reason that it had erroneously permitted, over the objection of the petitioner, certain evidence to be introduced. If this were the only basis for the court's action, the petitioner would be entitled to the relief he herein seeks.

A second reason, however, for declaring a mistrial was included in the order of the court. That order contained the following language: "* * * and for the further reason that the trial of this case had proceeded out of the presence and hearing of the defendant William Dandy, * * * and that as a result thereof a continuation of the trial would have been futile, * * *." The issue presented is whether the petitioner's absence during part of the trial constituted a manifest necessity for declaring a mistrial as provided in Code, 1931, 62-3-7, and Code, 1931, 62-3-2.

Factually, there is no dispute on this point. The transcript of the record of the trial below shows that William

Dandy was absent during the second session in the judge's chambers on August 9, 1963. Furthermore, the petitioner admits in his deposition that he was absent during most of that session and such absence is readily admitted on the record by his counsel. He does contend that nothing took place during his absence which materially affected his rights.

Code, 1931, 62-3-2, provides in part that "A person indicted for felony shall be personally present during the trial therefor." In a long line of cases dating from 1868 to 1962, this Court has held that it is mandatory, under the above statute, for one charged with a felony to be present in person when any step affecting him is taken from arraignment to and including final judgment. *State* v. *Vance*, 146 W. Va. 925, 124 S. E. 2d 252; *Dye* v. *Skeen*, 135 W. Va. 90, 62 S. E. 2d 681, 24 A.L.R. 2d 1234; *State* v. *Martin*, 120 W. Va. 229, 197 S. E. 727; *State* v. *Howerton*, 100 W. Va. 501, 130 S. E. 655; *State* v. *McCausland*, 82 W. Va. 525, 96 S. E. 938; *State* v. *Snider*, 81 W. Va. 522, 94 S. E. 981; *State* v. *Grove*, 74 W. Va. 702, 82 S. E. 1019; *State* v. *Sutter*, 71 W. Va. 371, 76 S. E. 811, 43 L.R.A., N.S., 399; *State* v. *Stevenson*, 64 W. Va. 392, 62 S. E. 688, 19 L.R.A., N.S., 713; *State* v. *Detwiler*, 60 W. Va. 583, 55 S. E. 654; *State* v. *Parsons*, 39 W. Va. 464, 19 S. E. 876; *State* v. *Greer*, 22 W. Va. 800.

This statute, Code, 1931, 62-3-2, has been considered by the courts throughout the years and has been applied with great strictness in favor of the defendant. The right of an accused to be present at all stages of his trial has been deemed to be an inalienable right. *State* v. *Vance*, 146 W. Va. 925, 124 S. E. 2d 252. The statute embodies the rule which existed at common law and was designed to protect a person accused of crime. This does not mean that the rule should be abrogated when, in a unique circumstance, it appears to affect the accused adversely. The protection of our inalienable rights is the very foundation stone of our liberty and law. If we permit the mitigation thereof by making exceptions thereto the ultimate result might be the loss of such rights. Our statute would be meaningless and one's right to be present during every stage of his

trial may no longer exist. So long as Code, 1931, 62-3-2, guarantees this right it should be strictly applied.

That the presence of an accused during his trial is of utmost import is reflected by the following language found in 23 C.J.S., Criminal Law, Section 973: "It has been broadly stated that a leading principle that pervades the entire law of criminal procedure is that, after indictment has been found, nothing shall be done in the absence of the prisoner. It is the duty of accused to be present at the trial, and, in the absence of a permissible waiver, under constitutional or statutory provisions to that effect and at common law, an accused charged with a felony is entitled to be present, and, for a valid trial and conviction, must be present, at every stage of the trial, or at least when any important or substantive step is taken."

In *State* v. *Howerton,* 100 W. Va. 501, 130 S. E. 655, the Court held that an accused must be present in his own proper person from the inception of the trial upon the indictment to the final judgment, inclusive, when anything is done affecting him; and this rule applies to his presence when the instructions are argued and acted upon by the court. The defendant must be present when an objection to a question propounded by counsel for the State is argued. *State* v. *Snider,* 81 W. Va. 522, 94 S. E. 981. The presence of the defendant is required during an argument on a motion to strike evidence. *State* v. *Sutter,* 71 W. Va. 371, 76 S. E. 811, 43 L.R.A., N.S., 399. It is reversible error to hear arguments in favor of and against a motion for a new trial when the accused is not personally present. *State* v. *Grove,* 74 W. Va. 702, 82 S. E. 1019. See also 53 Am. Jur., Trial, Sections 24 and 995, and 23 C.J.S., Criminal Law, Section 975, wherein *State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938, is cited.

The petitioner contends that even though he was absent during a part of the trial, nothing transpired at that time which affected him, and that there was no necessity for declaring a mistrial. In view of the statute and authorities cited and quoted above, this contention is without merit. An examination of the transcript of the trial which

is before us in this proceeding shows that during such absence counsel for the petitioner withdrew all of his prior motions for a mistrial; stated to the court that the petitioner was entitled to a directed verdict and argued that point at some length, including the citation and discussion of cases; presented argument in resistance to the granting of a mistrial; and made several statements in support of his contention that the petitioner's constitutional rights were being violated.

We think that the action which took place in the judge's chambers, in the absence of the accused, definitely affected his rights. This presents a stronger case than those cited above and clearly reveals that a substantive part of the trial was conducted in the absence of the petitioner. The question then presented is whether such absence gives rise to a manifest necessity for discharging the jury.

A trial court, acting under Code, 62-3-7, may, for manifest necessity, discharge the jury and order a new trial. Such action will not afford a basis for a plea of former jeopardy. *State* v. *Shelton,* 116 W. Va. 75, 178 S. E. 633; *Mack* v. *Commonwealth,* 177 Va. 921, 15 S. E. 2d 62; 22 C.J.S., Criminal Law, Section 258. The specific question presented here is whether the court, in discharging the jury because of the absence of the petitioner, abused its discretion. In view of the provisions of Code, 1931, 62-3-2, and the cases herein cited, we are of the opinion that the court properly exercised its discretion in discharging the jury when it became aware of the absence of the petitioner during a material part of the trial. All presumptions exist in favor of the regularity of the judgments of trial courts and one who asserts the contrary is required to overcome the presumption by record proof. *Mack* v. *Commonwealth,* 177 Va. 921, 15 S. E. 2d 62. See also *State ex rel. Ashworth* v. *Boles,* 148 W. Va. 13, 132 S. E. 2d 634, and cases cited therein. In the instant case, relative to the issue under consideration, the petitioner did not overcome that presumption. We are therefore of the opinion that the court did not abuse its discretion in finding that there was a manifest necessity for declaring a mistrial.

The petitioner here contends that since the court recited to the jury only one reason for declaring a mistrial, it was barred from including a further reason therefor in its order. This contention must fail. The correctness of its final action is the only material consideration, not the stated reasons for taking such action. Quoting the third point of the syllabus of the case of *Shrewsbury* v. *Miller*, 10 W. Va. 115, this Court, in *Rollins* v. *Daraban*, 145 W. Va. 178, 113 S. E. 2d 369, said: "It makes no difference upon what ground the court below decided the case, or the particular matter complained of, it is not the reasons assigned upon which the court decided a question that is to be reviewed, but the action of the court itself; and the question always in the appellate court is, whether the judgment to be reviewed is correct."

In *Dunn's Ex'rs.* v. *Renick*, 40 W. Va. 349, 22 S. E. 66, it was said: "* * * the action of a court may be stated to be on an insufficient reason, and yet be right for a different reason. The reason given is immaterial, and the question in the appellate court is, is the decision for any reason, correct?" See also *Henry* v. *Ohio River Railroad Co.*, 40 W. Va. 234, 21 S. E. 863. Since we find that the trial court did not abuse its discretion in declaring a mistrial on the ground of the absence of the petitioner during a part of the trial, we hold immaterial the fact that such reason was not stated to the jury.

Subsidiary issues were raised herein, but since we believe that they are not pertinent to the decision of this case they are not discussed.

For the reasons stated and discussed herein the writ prayed for is denied.

*Writ denied.*