**Jerry Wayne WRIGHT, Petitioner,**

**v.**

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 733–E.**

United States District Court
N. D. West Virginia.

Nov. 8, 1967.

————◆————

W, Mote Thompson, Jr., Clarksburg, W. Va., for petitioner.

Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, Jerry Wayne Wright, is serving a fifteen year sentence in the West Virginia State Penitentiary following his 1965 conviction for armed robbery from the Intermediate Court of Kanawha County, West Virginia.

Having exhausted his state remedies, Petitioner now seeks federal habeas corpus relief in this court. As basis for relief, Petitioner complains that he has been (1) denied due process of law and the right to a speedy trial, (2) subjected to double jeopardy, and (3) denied a right of appeal through ineffective assistance of counsel.

On December 7, 1966, this Court issued a show cause order to the Respondent. On June 12, 1967, Petitioner amended his petition for writ of habeas corpus setting forth additional grounds for relief. Following the appointment of counsel by this Court, a plenary hearing was held on September 8, 1967, in Clarksburg, West Virginia.

Petitioner testified, and the record bears him out, that he was indicted for armed robbery on April 20, 1965. His trial began on May 18, 1965, when a jury was empaneled, a plea of not guilty was entered, and evidence was heard.

During the course of the trial, the Petitioner's wife was called by the State as a witness. Before she was sworn the trial court called a recess for ten minutes. What transpired during that recess is not known but an Extract Transcript of Proceedings [1] filed here as Petitioner's

I. MR. HAZLETT: The next witness will be Mrs. Sandra Wright.

THE COURT: Let's take about a ten minute recess.

Thereupon, the trial of this case stood in recess.

   *     *     *     *     *

(After recess.)

MR. HAZLETT: If the Court please, the State rests.

MR. BICKEL: May we approach the bench, your Honor?

THE COURT: Yes.

Thereupon, out of the hearing of the jury, the following transpired:

MR. BICKEL: I think I will further object on the record that the State announced they would call Mrs. Sandra Wright, then did not call her.

THE COURT: In that case, you can call her.

MR. BICKEL: I will object to it.

THE COURT: Go ahead and put her on.

(Exception.)

THEREUPON, the trial of this case was resumed within the hearing of the jury, as follows:

SANDRA WRIGHT

having been first duly sworn as a witness, testified as follows:

DIRECT EXAMINATION

BY MR. HAZLETT:

Q Will you please state your name?

A Sandra Wright.

Q Where do you live?

A 4345 West Washington Street.

Q How old are you?

A Twenty.

Q Who is your husband?

A Jerry Wayne Wright.

Q Is he present in the courtroom?

A Yes, he is.

Q Mrs. Wright, on the night of Christmas, December 25th, and the early hours and prior to December 26th, 1964, had you been in his company?

MR. BICKEL: If it please the Court, we desire to object.

THE COURT: I will have to sustain the objection, then; you object to her

Exhibit Number One shows that immediately after the recess, through the Assistant Prosecuting Attorney for Kanawha County, the State rested its case. Petitioner's trial counsel asked to approach the bench and out of the hearing of the jury objected to the announced calling of Mrs. Wright without putting her on the stand. To settle the contended error or prejudice to the accused, the court had Mrs. Wright called and examined up to the point where she was asked about the night of the alleged robbery. At that time the Court entertained a motion by the defendant to exclude her testimony. The exact circumstances appear in the number 1 footnote. The gist of Petitioner's state trial court motion was that Petitioner's wife had been called without his consent. The motion was granted by the state trial court.

On October 13, 1965, Petitioner was retried on the same indictment and was convicted by a jury.

It is basically this retrial of which the Petitioner complains, charging that (1) the second trial placed him in jeopardy for the second time on the same offense, and (2) that Petitioner's constitutional right to a speedy trial was abridged by virtue of the delay occasioned by the mistrial. It is evident that the first and second grounds of the petition are based on one event, i. e., the calling of Petitioner's wife at his first trial without his consent.

In the briefs submitted and from oral argument, it is apparent that counsel for the Petitioner base the claim of double jeopardy upon two theories, both of which, counsel suggest, are situations different than those encompassed by the rule announced in State v. Wiseman, 141 W.Va. 726, 92 S.E.2d 910 (1956), where the granting of a mistrial on defendant's motion was held to be a waiver of his right to plead double jeopardy in a subsequent trial for the same offense on the same indictment.

First, the argument is made that regardless of any intent to cause a mistrial, the State violated Section 57–3–3, West Virginia Code (Michie 1961) which reads:

> In a criminal case husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor without the consent of the other, allowed to be called as a witness against the other * * *.

Petitioner contends that the State violated this statute by merely calling his wife as a witness since the prohibition runs to merely calling, without more, the spouse of an accused without his consent. The state court trial counsel was placed in the position of having to ask for a mistrial to protect his client from claimed prejudice before the first state court jury, and at the same time compelled to waive his right to complain of double jeopardy if a second trial should later occur.

Secondly, Petitioner contends that the State knew of the statutory prohibition but nonetheless called Mrs. Wright, knowing that she could not testify, without the Petitioner's consent, with the de-

---

testifying at all, anything about the circumstances of the crime?

MR. BICKEL: That is correct, sir, we object on statutory and constitutional grounds.

THE COURT: I will sustain the objection, then.

MR. HAZLETT: You may be excused. The witness then stood aside.

* * * * *

Thereupon, out of the hearing of the jury, the following transpired:

MR. BICKEL: Judge, would it be all right for us to adjourn now until 1:30?

THE COURT: Yes, if you will exchange instructions.

. MR. BICKEL: And at that time I would like to make a motion for a mistrial, and would like to present my grounds for it.

THE COURT: All right.

* * * * *

On the following day, after discussion in chambers, the following transpired:

THE COURT: The Court has found it necessary in this case to grant the defendant's motion for a mistrial, because of an irregularity during the trial, so I will have to excuse you at this time.

liberate intent to cause a mistrial. Counsel argue that such misconduct on the part of the State is that of which Justice Frankfurter spoke, in his separate concurring opinion, in Brook v. State of North Carolina, 344 U.S. 424, 429, 73 S. Ct. 349, 351, 97 L.Ed. 456, 460 (1953), when he said,

> A state falls short of its obligation when it callously subjects an individual to successive retrials on a charge on which he has been acquitted or prevents a trial from proceeding to a termination in favor of the accused merely in order to allow a Prosecutor who has been incompetent or casual or even ineffective to see if he cannot do better a second time.

This Court was unable to find, and counsel for the parties cite no West Virginia case, determinative of whether (1) an accused's spouse may be called to the stand before permission to testify has been given or (2) whether the State must first obtain permission from the accused allowing the spouse to testify before even calling her. Section 57-3-3, West Virginia Code (Michie 1961), uses the word "called" instead of "testify" which would seem to indicate that the slightest open court designation of the spouse as an adverse witness would be sufficient to meet the statutory proscription.

The language used in the Virginia Code is almost identical to that in the West Virginia Code. Construing their statute, the Supreme Court of Appeals of Virginia said,

> It is to be observed that the language of the statute has no reference whatever to the *introduction* of the wife as a witness against her husband in a criminal case. The plain terms of the statute forestall any such idea. In unequivocal language the Legislature has said that in no case, except for an offense committed by the husband against the wife, shall she be "allowed to be called as a witness" against her husband without his consent. The language employed shows the plain intent of the Legislature to place upon the commonwealth the burden of first obtaining the consent of the accused husband before it will be allowed to call the wife as a witness against him. [Wilson v. Commonwealth, 157 Va. 962, 162 S.E. 15, 16 (1932).]

The Virginia appellate court concluded that where the Commonwealth's Attorney had, by willful misconduct, prejudiced the accused, the proper procedure for accused to rectify this situation, was to move that the trial court discharge the present jury and grant a new trial.

■ The Intermediate Court of Kanawha County, the trial court in the present case, did precisely this. It declared a mistrial on Petitioner's motion and ordered a new trial. It acted according to the dictates of Section 62–3–7, West Virginia Code (Michie 1961) which provides for the jury to be discharged in a criminal case for "manifest necessity." [2] It is obvious that any prejudice felt by the first jury, due to the calling of Petitioner's wife and her failure to testify was obviated by the declaration of mistrial and the granting of a new trial, regardless of any "waiver" concept.

■ It was within the discretion of the trial court to declare a mistrial for manifest necessity under the above cited Code Section 62–3–7 on its own motion, in the absence of a motion by the Petitioner. With this in mind, it becomes <u>more</u> clear that there is no substance to Petitioner's contention that his counsel was placed on the horns of a dilemma by the action of the State. The result is the same, regardless of any intention or lack of intention to cause a mistrial by the State. When, through the happening of a fortuitous event, outside the control

---

2. "If a juror, after he is sworn, be unable, from any cause, to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place. And in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is a manifest necessity for such discharge."

of the court,[3] manifest necessity and the ends of justice require it, the trial court may discharge the jury and grant a new trial. When the jury is discharged, in accordance with this statute, jeopardy is set at naught. State v. Shelton, 116 W. Va. 75, 178 S.E. 633 (1935); State v. Little, 120 W.Va. 213, 197 S.E. 626 (1938); State ex rel. Dandy v. Thompson, 148 W.Va. 263, 134 S.E.2d 730 (1964).

■ The Petitioner has failed to carry the burden of proof sufficient to persuade this Court that the calling of his wife by the State was *intended* to result in a mistrial. If anything, the evidence tends to indicate that Petitioner and his counsel were intentionally vague when asked on repeated occasions whether they would object to the calling of Petitioner's wife, leaving the State with no alternative but to call her and then discover if she would be allowed to testify. This Court, under these circumstances, subscribes to the statement found in Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 905 (1961):

> * * * Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment—cases in which the defendant would be harassed by successive, oppressive prosecutions, or in which a judge exercises his authority to help the prosecution, at a trial in which the case is going badly, by affording it another, more favorable opportunity to convict the accused. Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial.

The procedure followed by the Intermediate Court of Kanawha County "does not deny the fundamental essentials of a trial, 'the very essence of a scheme of ordered justice,' which is due process." Brock v. State of North Carolina, 344 U.S. 424, 428, 73 S.Ct. 349, 351, 97 L.Ed. 456, 460 (1953). It did not deny the Petitioner his right to a fair and impartial trial, rather it guaranteed him this right.

■ Petitioner also complains that the delay between the granting of his mistrial on May 19, 1965, and his new trial on October 13, 1965, was an unreasonable one, violating the Due Process Clause of the Fifth Amendment to the Constitution of the United States and Article 3, Section 14 of the Constitution of West Virginia.

Nothing appears in the pleadings, nor did anything appear at the plenary hearing, showing how the delay was unreasonable, capricious, or prejudicial to Petitioner. The facts of this case do not fall within the terms of Section 62–3–21, West Virginia Code (Michie 1961) providing for the discharge of accused persons where they have not been tried within three regular terms of court after indictment or presentment. Petitioner did have a trial within the prescribed period.

The Supreme Court of the United States in speaking of the guarantee of a speedy trial said, in United States v. Ewell, 383 U.S. 116, 119, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966):

> This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of the accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a del-

---

3. In State v. Thompson, 148 W.Va. 263, 134 S.E.2d 730 (1964), the Supreme Court of Appeals adopted a statement from State v. Whitman, 93 Utah 557, 74 P.2d 696, that the necessitous circumstance must also be out of counsel's control as well as that of the court. Such a rule would not apply to the case at bar since the State trial court prosecutor sought to learn if Mrs. Wright's testimony would be allowed before calling her.

eterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950, [954]. "Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The essential ingredient is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 [1048].

And later in the same opinion at 383 U.S. 121, 86 S.Ct. 777, 15 L.Ed.2d 631, on the subject of double jeopardy:

The rule of these cases, which dealt with the Double Jeopardy Clause, has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error. United States v. Tateo, supra [377 U.S. 463] at 466 [84 S.Ct. 1587, at 1589, 12 L.Ed. 2d 448, at 450 (1964)].

The above language is pertinent to the present case. It is the holding of this Court that the delay complained of here was not unreasonable and the Petitioner was not denied either his constitutional or statutory right to a speedy trial.

The Petitioner's final ground is that he was denied the right to appeal through the ineffective assistance of counsel. After reading the pleadings and hearing the testimony of the Petitioner, his trial counsel and the prosecutors, it is the judgment of this Court that this issue resolves itself into a purely factual question.

Petitioner contends that he communicated his desire to appeal to the Supreme Court of Appeals of West Virginia to his counsel after his petition for writ of error was refused by the Circuit Court of Kanawha County; that he was under the impression that an appeal was being taken and wrote several letters to his attorney to that effect. These alleged letters (presented here basically in the form of copies retained by Petitioner) were made part of the record. Petitioner admitted that he was out of the State during a portion of the appeal period and did not so communicate with his attorney.

State trial court counsel testified that he received none, except the last, of the letters as claimed by Petitioner, and that if any others had been in fact received by him they would have been lodged in his file. None were present.

The State trial court counsel introduced three certified letters and the receipts therefor by which he had attempted to get in touch with Petitioner but all of which were returned unopened and unclaimed. The letters were opened at the hearing before this Court and their contents corroborated the State trial court attorney's testimony.

The Respondent here has offered convincing evidence which refute each and every element of Petitioner's allegation, sufficient to convince the Court, on the evidence, that the Petitioner was not denied his right to appeal for any reason other than his own failure to keep in touch with his counsel and to let his attorney know of his appeal determination. Counsel in a criminal case cannot be expected to know of their client's determination in matters such as desiring an appeal, other than through the client's expressed intentions, and, as here, no court could expect an attorney to pursue his client to unknown corners of the earth to learn of the convicted client's appeal intent.

For the reasons stated in the opinion, the petition must be and is hereby denied. An order will be prepared in keeping with the findings and conclusions of this opinion.